Colon L. DOUGLAS, Appellant,

v.

Oran NEILL, Appellee.

No. 8420.

Court of Civil Appeals of Texas, Texarkana.

Jan. 11, 1977.

Rehearing Denied Feb. 1, 1977.

**904**

L. F. Sanders, Sanders & White, Canton, for appellant.

W. Bruce Monning, Wynne & Wynne, Wills Point, for appellee.

CHADICK, Chief Justice.

Cancellation of a deed, imposition of a constructive trust, and recovery of actual and exemplary damages are primarily and alternately the purpose of this suit. The trial court directed a verdict and a take-nothing judgment was entered. The plaintiff below, Colon L. Douglas, has perfected an appeal and as appellant has briefed three points of error. The defendant below, Oran Neill, as appellee has responded by briefing four counterpoints.

The issues in the appeal are: 1) Whether there is an absence of evidence tolling the four-year statute of limitations governing cancellation of deeds; 2) whether a formal tender into evidence of the instrument sought to be cancelled is a prerequisite to cancellation; 3) whether an offer to restore consideration claimed to have been paid for the deed in question is a prerequisite to recovery under the record in this case.

In reviewing an instructed verdict case an appellate court must consider the evidence in the aspect most favorable to the cause of the party against whom the verdict was instructed, Colon L. Douglas, in this instance. *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951); 3 McDonald's, Texas Civil Practice, Sec. 11.28.2 (1970). Considered in its most favorable aspect there is evidence that Douglas and Neill were friends of long standing. They assisted each other and swapped work in operating separate and independent stock farms and let their cattle run together in pastures owned or controlled by them without regard to fences or land lines. It became known to them that one of Douglas's brothers would sell a five and a fraction acre undivided interest in land which adjoined or was a part of that they pastured in their separate stock farming operations. They agreed to undertake to purchase the interest. Douglas was twenty-five years senior to Neill and lived at or near his farm operation. Neill was employed in Athens, Texas, and lived there. Douglas suggested that

Neill, since he was in Athens every day and it would be convenient, approach the Athens State Bank and see if the bank would loan approximately $1,000.00, secured by the 72 acres that is here in suit, the money to be used in purchasing the undivided interest. He suggested that Neill find out what requirements the bank would make concerning title and payment of delinquent taxes.

Early in the morning of March 2, 1967, Neill appeared at Douglas's home and told him the bank was ready to make a loan. Douglas accompanied Neill and they drove to Canton, Texas. After breakfast they went to a land title abstractor's office. Neill took from his pocket a previously prepared instrument which Douglas had not seen before and handed it to the abstractor. The abstractor began reading it aloud before Neill and Douglas were seated; Douglas shifted from one chair to another to make room for Neill and in this preoccupation with the civilities failed to hear all that was being read. Without reading or examining the instrument, he signed and acknowledged it. He later learned the document was a warranty deed conveying his 72 acres of land to Neill in consideration of $10.00 and other good and valuable considerations.

As soon as execution and acknowledgment was accomplished, Neill picked up the instrument without allowing time for further examination by Douglas and he and Douglas returned to Neill's automobile. Douglas expected to continue to Athens and sign a note at the Athens State Bank and was mildly surprised when Neill assured him that the abstract office episode took care of the loan and delivered him home. Douglas's possession and occupancy of the 72 acres did not change but in 1972 he made inquiry as to why he was not receiving tax notices and this led to the discovery that the instrument he signed at the abstractor's office was a deed conveying his 72 acres of land to Neill. He immediately thereafter instituted suit.

An actionable misrepresentation may be expressed by acts, conduct or arti-

fice as well as in words and assertions or by a combination of words and conduct. *Ten-Cate v. First Nat. Bank of Decatur*, 52 S.W.2d 323 (Tex.Civ.App. Fort Worth 1932, no writ); *Blanton v. Sherman Compress Co.*, 256 S.W.2d 884 (Tex.Civ.App. Dallas 1953, no writ); 37 C.J.S. Fraud Sec. 9, p. 225; 37 Am.Jur.2d, Fraud and Deceit, Sec. 27 (1968); 25 Tex.Jur.2d, Fraud and Deceit, Sec. 1 (1961). The evidence is of a tenor from which a jury might conclude that Douglas and Neill entered into a joint venture to purchase the undivided acreage belonging to Douglas's brother. A joint venture is said to be a special combination of persons in the nature of a partnership engaged in the joint prosecution of a particular transaction for mutual benefit. 33 Tex. Jur.2d, Joint Adventurers, Sec. 1 (1962). Joint venturers or those about to assume the relationship owe each other utmost good faith and scrupulous honesty. *Fitz-Gerald v. Hull*, supra; 33 Tex.Jur.2d, Joint Adventurers, Sec. 6 (1962). As joint venturers, Douglas and Neill occupied a confidential relationship to each other. *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (1948); *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557 (1962).

■ The existence of a relation of trust and confidence does not free a defrauded person from using diligence to discover the fraud. *Courseview, Incorporated v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197 (1957); 37 Tex.Jur.2d, Limitation of Actions, Sec. 74 (1962). The relationship is a circumstance to be considered in determining whether the fraud might have been discovered by reasonable diligence. It may constitute an excuse for not taking action that would otherwise be required of a diligent person in an arms-length transaction or excuse alertness and a prompt search and investigation that would reveal that a fraud has been practiced. Reasonable diligence is ordinarily a question of fact for a jury. *Brownson v. New*, 259 S.W.2d 277 (Tex.Civ.App. San Antonio 1953, writ dism'd). Of course, diligence or lack of it may be proved as a matter of law, that is, when the proof is such that reasonable minds would not differ as to the effect

of the evidence, but the evidence here is not so conclusive.

■ The transaction shown by the evidence, as we must view it, has no characteristic or vestige of an arms-length vendor-vendee transaction. To the contrary, there is evidence of abuse of confidence, artifice and concealment. If believed by a jury, the evidence is sufficient to toll the statute of limitations applicable to cancellation of a deed. Under such circumstances the trial court should not have granted an instructed verdict on this ground.

■ The deed signed by Douglas conveying 72 acres to Neill was exhibited to Douglas during direct examination. Douglas testified he signed it and on cross-examination testified that a copy of it was attached to his trial pleadings and that it was the instrument he wished to cancel. Early in Douglas's direct examination, after he testified to his signature to the deed, counsel for Neill stated that ". . . we would like the deed introduced in evidence formally." The court directed that the deed be marked, ". . . so that the record will show what we are talking about." Douglas's counsel asked the reporter to mark the deed, saying, "I am not going to introduce it, but the court wanted it marked." The reporter marked the deed identifying it as Plaintiff's Exhibit 2.

The basic validity of appellee's argument that an instrument not legally before the court cannot be cancelled may be conceded but that is not the situation shown by the record. The request of Neill's counsel assumes the deed was before the court as he asked that it be *formally* introduced. The court's direction made the same assumption. The instrument and its content was actually identified by the reporter as an exhibit in the case. It was present in the courtroom, a part read in connection with interrogation of Douglas during the trial, and available for inspection by the judge and counsel. By pleading and proof the deed was openly exhibited in the courtroom and identified as the document sought to be cancelled. Under such circumstances, it must be said the

instrument was before the court and there was no failure of proof in this respect. See Tex.R.Civ.P. 1 and 434. The omission shown will not support the instructed verdict.

 It is settled that a litigant may not repudiate an instrument and at the same time retain benefits received thereunder. In this instance, Douglas sought cancellation of a deed that he claims was obtained from him by abuse of his confidence, and by artifice and concealment. He seeks restitution of his land by cancellation of the deed as well as other relief. Under his version of the facts he received no consideration for the deed; the deed was the product of fraud practiced upon him. When adjusting the equities in fraud cases cancellation may be employed in the furtherance of justice. In its posture on appeal, this is not a case in which restoration or an offer of restoration is a prerequisite to cancellation. 10 Tex.Jur.2d, Cancellation of Instruments, Sec. 49 and Sec. 51 (1959). Failure to make a tender does not support the instructed verdict rendered.

For the reasons discussed the judgment of the trial court is reversed and the case is remanded for a new trial.