Seymour B. SHWIFF, Appellant,

v.

William G. PRIEST, Jr., Appellee.

No. 16685.

Court of Appeals of Texas,
San Antonio.

April 6, 1983.

Rehearing Denied May 9, 1983.

Keith M. Baker, San Antonio, for appellant.

Tuck R. Chapin, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and DIAL, JJ.

## OPINION

PER CURIAM.

This suit was brought as an accounting of an alleged joint venture agreement to purchase real property in San Antonio, Texas, and to build thereon a twelve-unit apartment complex. William G. Priest, Jr. sued Seymour B. Shwiff to recover $42,027.52, representing one-half of the losses resulting from the alleged joint venture. The suit was tried before a jury which found that Priest and Shwiff built the apartment complex as a joint venture, that $34,400.00 rep-

resented one-half of the losses sustained by the joint venture, and that Priest was entitled to attorney's fees. Shwiff has perfected his appeal from the judgment on this verdict.

Priest's first counterpoint complains that Shwiff's first, second, fourth and fifth points of error are multifarious in violation of Tex.R.Civ.P. 418. For this reason Priest asks us not to consider these points. The points all complain that there was no evidence to support the jury finding that Priest and Shwiff built the apartment project as a joint venture. Shwiff's first point of error is representative of the four points complained of, and it is here set out.

## FIRST POINT OF ERROR

THIS CASE SHOULD BE REVERSED BECAUSE THERE IS NO EVIDENCE TO SUPPORT THE JURY'S ANSWER TO SPECIAL ISSUE NO. 1, WHICH READS AS FOLLOWS:

DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT WILLIAM G. PRIEST, JR. AND SEYMOUR SHWIFF BUILT THE APARTMENT BUILDING AT 503 EAST COURTLAND AS A JOINT VENTURE:

A "JOINT VENTURE" IS DEFINED AS A CONTRACTUAL RELATIONSHIP BETWEEN TWO OR MORE PARTIES INVOLVING A COMMUNITY OF INTEREST IN THE UNDERTAKING; A MUTUAL RIGHT OF CONTROL OR MANAGEMENT OF THE ENTERPRISE; AND THE AGREEMENT OF EACH PARTY TO THE TRANSACTION TO SHARE IN THE PROFITS AND IN THE LOSSES.

ANSWER "WE DO" OR "WE DO NOT."

WE, THE JURY, ANSWER: WE DO. IN THAT IT IS UNDISPUTED THAT THE APARTMENT HOUSE AT 503 EAST COURTLAND PLACE WAS NOT BUILT BY A JOINT VENTURE OF THE PARTIES BUT BY AMERICAN

MANUFACTURED HOMES CORPORA-
TION A CORPORATION, IN WHICH
APPELLANT HAD NO INTEREST;
HENCE, THE COURT ERRED IN

(1) SUBMITTING SPECIAL ISSUE NO.
1 TO THE JURY OVER APPEL-
LANT'S OBJECTION;

(2) OVERRULING APPELLANT'S MO-
TION NON OBSTANTE VEREDIC-
TO; AND

(3) ENTERING JUDGMENT FOR AP-
PELLEE ON THE VERDICT.

These points are not multifarious. A point of error is multifarious if it embraces more than one specific ground of error, or if it attacks several distinct and separate rulings of the trial court. *Citizens Building, Inc. v. Azios,* 590 S.W.2d 569 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Rio Delta Land Co. v. Johnson,* 566 S.W.2d 710 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). The points are all no evidence points. As such, they are procedurally grounded on the submission to the jury of the vital fact issue set out in Special Issue No. 1, and on the overruling of Shwiff's motion for judgment notwithstanding the verdict. Calvert, *"No Evidence" and "In-sufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361, 362 (1960). The complaint that there is no evidence to support the jury's answer to Special Issue No. 1 will necessarily involve consideration of the trial court's actions in the three instances set out in each of these points of error. *See Simonton v. Taylor,* 306 S.W.2d 775 (Tex.Civ.App.—Beaumont 1957, no writ). Even if the points are multifarious, we must still consider them since, after reviewing the statement and argument under these points, we are able to determine with a reasonable degree of certainty the alleged error. *Citizens Building, Inc. v. Azios, supra; Rio Delta Land Co. v. Johnson, supra.*

What we are called upon to decide in Shwiff's first five points of error is whether there is any evidence, and whether the evidence is sufficient to support the jury finding that Priest and Shwiff built the apartment building as a joint venture. In looking to the no evidence points first, we must examine the evidence in its most favorable light, considering only the evidence and inferences which support the finding, and rejecting the evidence and inferences which are contrary to the finding. *Butler v. Hanson,* 455 S.W.2d 942 (Tex. 1970); *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950). In deciding whether there is factual sufficiency of the evidence, we must consider and weigh all the evidence to determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). From our review of the evidence in light of these rules we hold that there was sufficient evidence as well as ample probative evidence to support the finding that the apartment building was built by Priest and Shwiff as a joint venture.

A joint venture is based upon an agreement, either express or implied, and must consist of the following four elements: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Coastal Plains Development Corp. v. Micrea, Inc.,* 572 S.W.2d 285 (Tex.1978). The intention of the parties is the prime element in determining whether or not a joint venture exists. *Id.*

The evidence adduced shows that Priest and Shwiff purchased two adjoining lots at 503 East Courtland in San Antonio, Texas, in 1973 as co-owners. They intended to construct a twelve-unit apartment complex on the lots. Some five to six months thereafter, Priest and Shwiff deeded the Courtland lots to American Manufactured Homes Corporation ("AMH"), a corporation of which Priest was the secretary and managing officer, and of which his father, William G. Priest, Sr., was the president. Priest testified that the transfer was made in order to obtain financing from a lender who insisted that the loan be made to a corporation so that it could charge the higher interest rate applicable to corporations. A $100,000.00 interim construction loan was

made to AMH the day after the property was transferred to it. The real estate lien note made payable to the lender was signed by Priest and Priest, Sr., in their individual capacities and as officers of AMH, and by Shwiff.

During construction, problems were experienced causing the project's actual cost to exceed the amount of the interim loan. The project eventually was completed at a loss in excess of $50,000.00. Construction was completed on the project around November of 1974. Priest and Shwiff signed a builder's completion affidavit under a heading entitled "Owner's Acceptance." On August 20, 1974, prior to the completion of the project, Shwiff had executed a power of attorney giving Priest authority to negotiate and accept permanent financing on the project. Permanent financing was arranged in December of 1974.

An attempt was made to set out the parties' agreement or relationship in the form of a letter from Priest to Shwiff dated August 17, 1973. That letter reads as follows:

Reference: Interim Agreement on 12 Unit Apartment Project, Lots 1 & 2, Block 7, N.C.B. 2998, 503 East Courtland Street, San Antonio, Texas

Dear Sy:

I agree with you that we should have this as an interim agreement in case something happens to either of us before we have a chance to have the formal documents drawn and signed, whatever form they may take.

It is our understanding that you and I are to join together to buy this land, obtain all of the financing, and construct and own this twelve unit apartment project. We are doing this on a 50%–50% basis on everything, such as sharing costs, money contributions, profits and/or losses from operating the units and/or selling them. Please sign the copy and return to me if this meets with your approval.

The original of this letter was signed by Priest; Shwiff did not sign.

This letter was followed by a written agreement entered into between the parties and by AMH on October 1, 1973. It was signed by both Priest and Shwiff. The three operative paragraphs of this agreement state:

1. Priest and Shwiff agree to build for the Corporation an apartment, and pursuant to the plans and specifications attached hereto and made a part hereof.

2. The Corporation agrees to pay all bills as submitted to it by Priest and Shwiff, and to pay the same as they become due.

3. The Corporation agrees to deed back the premises located at Lots 1 and 2, Block 7, New City Block 2998, in the City of San Antonio, Bexar County, Texas to Priest and Shwiff upon the completion of the above referenced apartment construction, and Priest and Shwiff agree to purchase said premises from the Corporation for all amounts tendered by the Corporation for the construction of the apartments.

Shwiff introduced into evidence a carbon copy of this same agreement signed on September 24, 1973, by Priest and by Priest, Sr. for AMH. Shwiff did not sign this copy. The only other difference between this document and the October agreement is a handwritten correction of the first paragraph made by Priest which reads, "Corporation is to do the building."

AMH never deeded the property back to Priest and Shwiff. However, it is undisputed that Shwiff never tendered any money to the corporation as called for in the October agreement. In fact, beyond some four to five thousand dollars in initial capital contributions (or "loans" as Shwiff refers to them), Shwiff contributed no money to the project. Priest and his father paid the mortgage payments until November of 1974 when, due to financial difficulties, the Priests were unable to continue making the payments. The property was foreclosed upon by the lender in August of 1976.

Priest testified that he showed Shwiff copies of every invoice that came in and all checks that went to pay the invoices. He testified that they had endless discussions

regarding the expenses. There are also in evidence several letters from Priest to Shwiff regarding the project and the division of the anticipated profits upon its completion. Shwiff admits that he and Priest discussed the project during its construction and that he visited the site numerous times during construction. Priest further testified that he and Shwiff were "partners," that ownership of the project was on a 50–50 basis, and that they were to share the expenses, profits and losses of the project on an equal basis. Priest testified that he and Shwiff were to jointly operate and participate in the management of the project. It was Shwiff's contention that he did nothing more than lend his credit to the enterprise, that Priest guaranteed Shwiff he would incur no losses, that profits were never discussed, and that he was interested in the project because he wanted to manage it when it was completed.

 While much of the evidence regarding the construction of the project by the joint venture was controverted or given a different interpretation by Shwiff, nevertheless, we hold that there was ample evidence to support the jury's answer to Special Issue No. 1, and that the finding was not against the great weight and preponderance of the evidence. When the evidence is controverted we are not permitted to substitute our judgment for that of the jury when there is competent evidence from which the jury could have believed either side's version of the disputed issues. *Shelton v. Taylor,* 615 S.W.2d 912 (Tex.Civ.App. —Eastland 1981, no writ); *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

 Shwiff's primary argument against the existence of a joint venture is that the project was constructed by AMH rather than by the parties. Priest responds that the corporation was used only as a medium for the accomplishment of the purpose of the joint venture. The fact that title to the property was placed in AMH did not negate the existence of the joint venture. The evidence shows that Priest and Shwiff could not have obtained their loan as individuals. They thus were faced with the choice of abandoning their project or finding a corporation through which to build it. They chose the latter course. They executed the documents transferring the property to AMH and signed the construction loan documents. They signed an agreement to buy back the apartment from AMH for "all amounts tendered by the corporation for the construction of the apartments." Although Shwiff contends he was merely loaning his credit to the corporation in order for it to obtain financing, there is sufficient probative evidence from which the jury could have concluded that the project was Priest's and Shwiff's and that AMH was merely the medium through which their investment was accomplished. *Cf. Colonial Refrigerated Transportation, Inc. v. Mitchell,* 403 F.2d 541 (5th Cir.1968).

 Shwiff also argues that the parol evidence rule prevents Priest from contradicting by his testimony the documentary evidence which establishes that the project was built by AMH. We do not agree. The October agreement is incomplete on its face. It appears to be merely an agreement setting out the means by which the building of the project was to be accomplished. It does not address any agreement regarding division of profits and losses, or control and operation of the apartment project. If, in light of the surrounding circumstances, the instrument appears to be intended, not as a complete and all-inclusive embodiment of the agreement, but as a partial or incomplete memorial or memorandum, then it may be supplemented by proof of other terms outside the document. *Warren Brothers Co. v. A.A.A. Pipe Cleaning Co.,* 601 S.W.2d 436 (Tex.Civ.App. —Houston [1st Dist.] 1980, writ ref'd n.r.e.); 2 R. Ray, Law of Evidence § 1611 (Texas Practice 1980). Further, there is evidence that the remainder of the parties' agreement was oral. An attempt was made to reduce this oral agreement to writing in the August letter agreement which Shwiff failed to sign. The parol evidence rule does not preclude enforcement of prior or contemporaneous oral agreements which are

not inconsistent with and do not vary or contradict the express or implied terms or obligations of the written agreement. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30 (1958). Shwiff's first five points are overruled.

 Having overruled Shwiff's first five points of error, we must necessarily overrule his tenth point which argues that Priest individually has no cause of action against Shwiff since it was AMH that sustained any losses. We have found sufficient evidence to support the finding of the existence of a joint venture. Priest, as a joint-venturer, had a cause of action for an accounting against his co-venturer. *Lane v. Phillips,* 509 S.W.2d 894 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.).

 In his sixth point, Shwiff complains that the trial court erred in failing to submit his requested special issues relating to his affirmative defense of novation. His thirteenth point is similar, complaining of the failure to submit his fraud issues. We hold that the trial court correctly refused to submit both sets of issues. When the complaint is that the court has wholly failed to submit the controlling issues necessary to establish an independent ground of recovery or defense, the party relying upon such ground must request the submission of such omitted issues in substantially correct form, or it will be waived. *Powell v. Lenox Jenkins Interiors,* 540 S.W.2d 772 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.); *Davis Bumper to Bumper, Inc. v. American Petrofina Co. of Texas,* 420 S.W.2d 145 (Tex.Civ. App.—Amarillo 1967, writ ref'd n.r.e.); Tex.R.Civ.P. 279; 3 R. McDonald, Texas Civil Practice § 12.32.2 (rev. ed. 1970). When the requested issue is one of a series of interdependent issues all of which are essential properly to submit a theory of recovery or defense and none of which is already included in the charge, a request is in substantially correct form only when it incorporates all of the required special issues. *Mata v. Albert,* 548 S.W.2d 496 (Tex. Civ.App.—Eastland 1977, writ ref'd n.r.e.); *Finto v. Texas & N.O.R. Co.,* 265 S.W.2d 606 (Tex.Civ.App.—San Antonio 1954, no writ); 3 R. McDonald, *supra* at § 12.33.2.

 Shwiff's novation issues are incomplete. There are four elements necessary to establish a novation: (1) a previous valid obligation, (2) a mutual agreement of all parties to accept a new agreement, (3) substitution of the new contract for the old, effecting its extinguishment, and (4) a valid new agreement. *Commercial Credit Corp. v. Brown,* 471 S.W.2d 914 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.); *Utay v. Urbish,* 433 S.W.2d 905 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). Shwiff's issues do not request a finding that the October agreement was substituted for the letter agreement; he only has requested findings that that was the parties' intent. Further, we find no evidence in the record of a *mutual* intent to substitute the October agreement for the letter agreement. While the letter agreement indicates that it is only an interim agreement until formal documents are drawn, there is no evidence that Priest intended that the October document substitute for and extinguish the letter agreement. His testimony is to the contrary. His letters to Shwiff indicate that he was expecting profits and losses to be divided.

 Likewise, Shwiff's requested fraud issues are incomplete. As an alternative affirmative defense, Shwiff had pleaded that if a joint venture was found to exist, Priest fraudulently induced him to enter the venture by his promise that Shwiff would never lose any money. To establish actionable fraud it must appear: (1) that a material representation was made; (2) that it was false; (3) that the speaker made it with the knowledge that it was false, or recklessly without any knowledge of its truth and as a positive assertion; (4) that the speaker made it with the intention that it should be acted upon by the complaining party; (5) that the complaining party acted in reliance upon it; and (6) that the complaining party thereby suffered injury. *Custom Leasing, Inc. v. Texas Bank and Trust Co. of Dallas,* 516 S.W.2d 138 (Tex.1974). Shwiff's requested issues ask for findings only on the first four elements;

he has failed to request issues which would establish the fifth and sixth elements of his defense. He thus failed to request his fraud issues in substantially correct form and has waived his defense. *Powell v. Lenox Jenkins Interiors, supra.* Shwiff's sixth and thirteenth points of error are overruled.

Shwiff's seventh, eighth and ninth points of error demand reversal for the reason that AMH reported the loss sustained when the project was foreclosed upon on its 1975 income tax return, and because Priest, Sr. took the depreciation of the apartment project and the operating loss for the project as deductions on his personal federal income tax return for 1975. Shwiff contends that these actions constitute unjust enrichment and fraud, and that they bar Priest's recovery based on the equitable doctrine of clean hands. He argues that, assuming the joint venture did exist, these actions constitute a violation by Priest of the fiduciary duty he owed to Shwiff.

With regard to the arguments that Priest, Sr.'s actions constitute fraud and unjust enrichment, we note simply that Priest, Sr. occupied no fiduciary relationship with regard to Shwiff. Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship. *Carnes v. Meador,* 533 S.W.2d 365 (Tex.Civ. App.—Dallas 1975, writ ref'd n.r.e.). There is no evidence nor any pleading of the existence of such a relationship between Shwiff and Priest, Sr. Further, there is no pleading or proof of any material misrepresentation on the part of Priest, Sr. which would support the existence of actionable fraud. *See Stone v. Lawyers Title Insurance Corp.,* 554 S.W.2d 183 (Tex.1977). Neither is there a basis in the record for holding that Priest, Sr. has unjustly enriched himself at the expense of Shwiff. *City of Houston v. Howe & Wise,* 373 S.W.2d 781 (Tex.Civ.App. —Houston 1963, writ ref'd n.r.e.), cited by Shwiff in support of his argument can be distinguished. In that case there were jury findings sufficient to establish actionable fraud in support of the unjust enrichment

holding. Further, the finding that the defrauded party had reasonably relied upon the other party's misrepresentation was supported by evidence of a very close business and personal relationship existing between the parties for many years. In the instant case there are no jury findings that Priest, Sr. defrauded Shwiff. Priest, Sr. is not even a party to this suit. Further, no close, confidential relationship between Shwiff and Priest, Sr. is developed by the evidence. Shwiff and Priest, Sr. spoke five to ten times by phone during the construction of the project. Priest, Sr. does not recall a face-to-face meeting with Shwiff; Shwiff says they once were introduced. Priest, Sr. was never present at the negotiations between Shwiff and his son, and apparently had no other dealings with Shwiff other than to write him a note saying he was unable to continue making the mortgage payments. There exists no relationship between Shwiff and Priest, Sr. which would justify a finding of unjust enrichment.

There is likewise no pleading or proof that AMH and Shwiff were engaged in a joint venture or in any other type of fiduciary relationship with one another. Shwiff assumes that his allegation that Priest was the vice-president and managing officer of AMH when it took the deduction is sufficient to show Priest breached a fiduciary duty owed to him. No theory was presented whereby Priest could be held personally liable for the actions of AMH; there was no allegation that the corporation was Priest's alter ego, that AMH was a sham used to avoid personal liability or to perpetuate a fraud, that Priest was acting as a principal in his own name, that he personally committed a tort while acting as agent for his corporation, or that AMH committed a tort acting as Priest's agent in furtherance of his personal business. *See Fagan v. LaGloria Oil & Gas Co.,* 494 S.W.2d 624 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); 19 R. Hamilton, Business Organizations § 234 (Texas Practice, 1973). Even if we assume for purposes of this discussion that Priest is somehow personally liable for

the actions of AMH in this regard, we must still disagree with Shwiff's arguments. Shwiff requested no special issues sufficient to support his allegations; his only fraud issues related to the alleged representation by Priest that Shwiff would suffer no monetary losses as a result of the joint venture. This alone is enough to waive the defense. *Powell v. Lenox Jenkins Interiors, supra;* Tex.R.Civ.P. 279.

 This discussion, of course, assumes that the taking of the deduction by AMH somehow injured Shwiff. Yet, Shwiff has failed to show that he suffered any injury. Beyond his allegations of fraud and unjust enrichment, Shwiff has not shown how he was damaged. It is true that persons engaged in a joint venture, or about to assume such relationship, owe to each other the utmost good faith and the most scrupulous honesty. *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951); *Douglas v. Neill,* 545 S.W.2d 903 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.). None of the joint venturers may obtain any secret profit or advantage for themselves. *Warner v. Winn,* 145 Tex. 302, 197 S.W.2d 338 (1946). No breach of such fiduciary duties has been shown. There is no showing that Shwiff was unaware of the deduction or that he opposed it. There is no showing that the taking of the deduction amounted to a profit or advantage for Priest or AMH. Further, Shwiff has not shown he was entitled to the deduction, or that, if he was so entitled, the taking of the deduction by AMH somehow deprived him of the opportunity to take it himself. It is uncontroverted that AMH was the record owner of the apartment complex at the time it was foreclosed upon. It is the rule that only the taxpayer who sustains a loss is entitled to take the deduction therefor. *Calvin v. United States,* 354 F.2d 202 (10th Cir.1965). Moreover, the fact that AMH took the deduction did not necessarily deprive Shwiff of the right to likewise claim the loss deduction on his own tax return if he felt he was entitled to it. Presumably, the Internal Revenue Service would then decide which taxpayer was entitled to the deduction.

 Finally, Shwiff has not established his defense of unclean hands. As we have indicated, Shwiff has not shown that the taking of the deduction has harmed him. The clean hands maxim is not applied in situations where the defendant has suffered no harm. *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960); *Gillen v. Diadrill, Inc.,* 624 S.W.2d 259 (Tex.App.—Corpus Christi 1981, writ dism'd). Shwiff's seventh, eighth and ninth points are overruled.

 In his eleventh and twelfth points, Shwiff contends that attorney's fees should not have been awarded. Tex.Rev.Civ.Stat. Ann. art. 2226 was amended, effective August 29, 1977, to provide that attorney's fees would be recoverable in suits on oral or written contracts generally. It has been held that since this statute is one dealing with a remedy, as distinguished from a right or cause of action, it is applicable to actions tried after its passage even though the cause of action arose prior thereto. *Villiers v. Republic Financial Services, Inc.,* 602 S.W.2d 566 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.). The present case was tried in August of 1980. Further, in 1979, the Legislature removed all doubt as to its intent by declaring article 2226 to be remedial in nature and by specifically providing that it should apply to pending actions. Shwiff's contention that the 1977 amendment is inapplicable to the present action because Priest's cause of action accrued prior to its effective date is without merit. The point of error is overruled.

The judgment of the trial court is affirmed.