WARREN MATHIS AND BARBARA MATHIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mathis v. Commissioner
Docket No. 12823-84.
United States Tax Court
T.C. Memo 1986-34; 1986 Tax Ct. Memo LEXIS 575; 51 T.C.M. (CCH) 338; T.C.M. (RIA) 86034; January 27, 1986. William Norton Baker, for the petitioners. A. Shawn Noonan, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1980 in the amount of $2,365.45. The only issue presented is whether petitioners realized a short-term capital gain in connection with the purchase of real property. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Warren Mathis and Barbara Mathis (petitioners), [1] husband and wife, resided in Taxas on May 7, 1984, the date the petition was filed in this case. They filed their joint Federal income tax return for the calendar *576 year 1980 with the Internal Revenue Service Center in Austin, Texas. In addition to other business activities, petitioners, along with Hershel and Octavia Carthel (parents of Barbara Mathis and hereinafter "Carthels") jointly engaged in farming operations. J. B. Smith (Smith), beginning in 1963, operated the East Mound Gin, Inc. (Gin), on land near petitioner's farm. Smith had purchased this land for $675 per acre. During the mid-1970's, Smith offered J. C. Eiring (an adjoining landowner) about $1,200 per acre to purchase a portion of Mr. Eiring's farm. That offer was rejected. Thereafter, Mr. Eiring died and petitioner and Smith discussed purchase of a 287.45-acre tract of Eiring's farm. In November 1979, Smith and petitioner agreed to make a bid to purchase the Eiring farm, and that Smith would take title to approximately 46 acres [2] if they were successful in bidding for the property at the estate sale. The parties estimated that the land would sell for between $850 and $1,050 per acre and agreed that Smith would pay the successful bid price. *577 The estate sale was held on December 6, 1979. Petitioner attended the estate sale alone, since Smith was busy ginning cotton. During October, November, and December, cotton gins are required to operate long hours to keep up with the harvest. Petitioner was the successful bidder at the estate sale, and he entered into a contract with the Hale County State Bank, Plainview, Texas, for the purchase of 287.45 acres of land (the Eiring farm), together with all fixtures and improvements thereon for a price of $930 per acre. On January 15, 1980, the Hale County State Bank, as executor of Eiring's estate, conveyed the 287.45 acres and improvements to petitioners and the Carthels for a total consideration of $267,328.50. Petitioners and the Carthels allocated $48,120 of the $267,328.50 purchase price to the improvements, all of which were on the portion of the 287.45 acres which petitioner had agreed to purchase. [3] Eight hundred fifty-seven dollars and fifty-three cents in expenses were incurred in connection with the purchase of the 287.45-acre tract. *578 On February 19, 1980, [4] petitioners and the Carthels conveyed 46.15 [5] acres of the 287.45-acre tract to the Gin for the bid price of $930 per acre. Approximately one-half (20-25 acres) of the 46.15-acre portion acquired by the Gin contained a playa lake. In the deed to the Gin, petitioners and the Carthels reserved a 20-foot easement for the purpose of operating, maintaining, and reconstructing irrigation pipelines then existing on the tract, and an easement to take and use surface water from the lake. Petitioners, on the theory that the 287.45 acres of land had been bought together with the Carthels and the Gin, did not report any *579 gain or loss on their 1980 Federal income tax return in connection with the transfer or sale of the 46.15-acre tract to the Gin. Respondent, by a deficiency notice mailed on April 16, 1984, determined that the transfer to the Gin by petitioner was a sale which resulted in gain, 50 percent of which should be reported by petitioner. Respondent determined that the petitioners' and Carthels' adjusted basis in the land sold to the Gin was $36,931.57. This amount was derived by reducing the purchase price for the entire 287.45-acre tract by the $48,120 allocated by petitioner and the Carthels to the improvements on the real property; addting the $875.53 expenses of purchase; and then dividing the remainder by the total number of acres (287.45), and multiplying that times the number of acres sold to the Gin. [6]
Petitioners contend that the oral agreement between petitioner and Smith either caused the purchase of land to be a "joint venture type of arrangement" or permitted petitioner to act as an agent for *580 all the parties in bidding on the property at the estate sale. Alternatively, petitioner contends that if we determine that he purchased the property and subsequently sold it to the Gin, then the allocation on a per-acre basis of the real property should either be done at the time of the purchase (including the value of the improvements) or that the value of the property ultimately acquired by the Gin is in excess of the $930 per-acre purchase price because of prior offers by the Gin to purchase the land. Respondent contends that petitioner purchased the land and sold it to the Gin. Further, respondent contends that the basis in the land is cost, reduced by the amount of improvements, and increased by the amount of expenses incurred in the purchase. Petitioners and respondent basically agree that each acre of the 287.45 acres had substantially the same value at the date of the transfer to the Gin. [7]
*581 OPINION After a careful examination of the record, we find that the transfer of property from petitioner to the Gin was not a separate sale or exchange giving rise to short-term capital gain under section 1001, I.R.C. 1954. Accordingly, we need not address the parties' contentions regarding proper basis computation and allocation. Whether a sale has taken place is a question of fact. Grodt & McKay Realty, Inc. v. Commissioner,77 T.C. 1221, 1237 (1981). In making this factual determination, we must focus on what was actually done. In doing so, the intent of the parties must be examined. Carlton v. United States,385 F.2d 238 (5th Cir. 1967). The basic facts as set forth in this opinion are simple. Petitioner and Smith reached an oral agreement to try to purchase land at the estate sale. [8] Each party had expressed interest in a portion of the land to be sold. The land, however, could be purchased only in its entirety. *582 Petitioner attended the sale alone. At the sale, bids were accepted per-acre. Petitioner successfully bid $930 per acre for the tract in its entirety. This bid was well within the range previously agreed to by petitioner and Smith, and over $200 per acre less than Smith had previously offered for the land. Petitioner initially took title to the land in his name only. [9]
Pursuant to their plan, petitioner transferred approximately 46 acres of land to Smith at the bid price, about $930 per acre. [10] We decline to find that this subsequent transfer of a portion of the land made pursuant to the agreement between petitioner and Smith was a sale or exchange separate and distinct from the original land purchase at the estate sale. [11]
*583 The facts of this case in substance indicate that only the purchase of land took place, beginning with the negotiations between petitioner and Smith and ending with the transfer of land to Smith. Petitioner and Smith agreed to buy land, and purchased the land according to their agreement. [12]
Decision will be entered for the petitioners.
Footnotes
1. When we refer to "petitioner," we refer to Mr. Mathis.↩
2. This is apparently the same parcel of land that Smith had attempted to purchase before Mr. Eiring's death.↩
3. It appears that the parties were well aware that the improvements on the Eiring farm were not on the portion Smith agreed to acquire.↩
4. Some discrepancy exists as to when the land transfer between petitioner and the Gin (Smith) was completed. Smith suffered a severe heart attack in Jan. 1980, and petitioner had an operation and was hospitalized in March. Petitioner testified that the deal was not closed until after he was released from the hospital, but the deed transferring the property is dated Feb. 19, 1980. ↩
5. Although the statutory notice of deficiency reflects 48.24 acres of land transferred to the Gin, the correct amount, as agreed by the parties, is 46.15 acres.↩
6. Petitioners claimed a depreciation deduction on their 1980 Federal income tax return in connection with the $48,120 in improvements on the acreage purchased from the estate.↩
7. It is assumed that petitioners agree that each acre of land had substantially the same value on the date of sale for purposes of their primary position but not the alternative where they contend that if the land is allocated subsequent to the reduction of the improvement that the 46.15 acres transferred to the Gin had a higher value and were worth the $930, being the price at which petitioner sold them to the Gin.↩
8. The enforceability of the agreement between petitioner and Smith is not at issue here. At the time of the deficiency notice, the agreement was wholly executed by both parties. As such, this Court makes no findings regarding the enforceability of such agreement had it been executory.↩
9. The fact that petitioner initially took title to the land in his own name is not determinative. Shwiff v. Priest,650 S.W.2d 894, 900↩ (Tex. Civ. App. 1983).
10. In determining whether the transfer of land from petitioner to Smith, dated Feb. 19, 1980, was a separate sale and therefore subject to the incidence of taxation, we must consider the substance of the transaction. Commissioner v. Court Holding Co.,324 U.S. 331, 334↩ (1945). 11. We are cognizant that petitioner and Smith entered into this transaction in a rural setting, where informality in business is not unusual.Although lawyers could have readily obviated the need for this controversy, we are inclined to respect taxpayers' customs and practices where, as here, the net effect of the parties' agreement was effected, albeit in an unsophisticated and cumbersome manner. See Young v. Commissioner,T.C. Memo. 1985-221, wherein the Court commented: "[W]e think the informality of these * * * transactions in Floyd County, Virginia, as described by petitioner, is entirely consistent with the rural setting and practices * * * in that area of Virginia." [49 TCM 1439↩, 1444, 1985 P-H Memo T.C. par. 85,221 at 981.]
12. Both men testified at trial. Petitioners' counsel, in his closing argument, succinctly summarized the testimony: Admittedly, they were not lawyers or detail people, but they knew what they were doing. Mr. Mathis was going to go to the auction, buy the property, and the gin was going to take what they needed there at the same price per acre as was paid at the auction. * * * The gin had been trying to buy that property for twelve or $1400 an acre for several years. This is really just a joint venture where they went together and bought the property and then they split it up after they bought it. It was nothing more and nothing less.↩