Wilson-RJ v. State 








NO. 10-90-021-CR

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          ROBERT J. WILSON,
                                                                                            Appellant
          v.

          THE STATE OF TEXAS,
                                                                                            Appellee

* * * * * * * * * * * * *

 From 18th Judicial District Court
Johnson County, Texas
Trial Court # 26214

* * * * * * * * * * * * *

CONCURRING OPINION

* * * * * * *
          The State alleged in the indictment that Appellant "unlawfully and intentionally, with intent
to defraud and harm another, [made] a writing so that it purported to be the act of Roland Walden,
who did not authorize the act and said writing was a release of lien." Appellant tried to quash the
indictment on the ground that he could not prepare an adequate defense without "fair notice . . .
of who was defrauded or harmed." His first point is based on the denial of the motion to quash.
          The majority disposes of this point with the following comments:
There were only three possible persons (or entities), which could have been harmed
by the forgery of the release of the first lien--or which [Appellant] could have "intended
be harmed" by the forgery of the release of the first lien: the Burleson Bank, which
purchased the second lien note from [Appellant] believing it to be a first lien and relying
that the original first lien in favor of the Joshua Bank had been released; the Joshua Bank
which owned the first lien, and which the forged released purported to release; and the
Title Company who assumed or would assume that the first lien had been released upon
their examination of the County Clerk's records. [Appellant] was a lawyer; was the
obligor on the first lien note to the Joshua Bank; was the beneficiary of the second lien note
to himself; had to be aware of the foregoing; and could not be surprised by evidence
thereof.
 
We do not think that [Appellant] was denied any requisite item of notice; but
assuming, without deciding, that he was so denied, that denial, under this record, could
in no way prejudice his substantial rights, by impacting his ability to prepare a defense. 
Article 21.19 C.C.P.; Janecka v. State, Ct.Crim.Appls, 739 S.W.2d 813, 819; Adams v.
State, Ct.Crim.Appls, 707 S.W.2d 900, 903.

          The majority correctly states the two-pronged test for reversible error: (1) whether
Appellant was denied some requisite item of notice; and, if so, (2) whether that denial prejudiced
his substantial rights by impacting his ability to prepare a defense. See Tex. Code Crim. Proc.
Ann. art. 21.19 (Vernon 1989); Janecka v. State, 739 S.W.2d 813, 820-21 (Tex. Crim. App.
1987). Although I agree with the disposition of the first point and the appeal, I write a concurring
opinion because I disagree with the majority's analysis. 
          Essentially, the majority holds that Appellant was not denied a requisite item of notice
because: (1) he was a lawyer; (2) only three entities could have been harmed by the forged release,
i.e., two banks and a title insurance company; and (3) he had to know that information and could
not be surprised by its proof. Adequate notice from which to prepare a defense must come from
the charging instrument itself. Beck v. State, 682 S.W.2d 550, 554 (Tex. Crim. App. 1985). One
cannot simply say, as does the majority, that Appellant was not entitled to the information because
he had to know the facts. See id. 
          A person commits an offense if he forges a writing with the intent to defraud or harm
another. Tex. Penal Code Ann. § 32.21(b) (Vernon 1989). To obtain a conviction the State had
to prove beyond a reasonable doubt that Appellant intended to defraud or harm another person or
entity by forging the release of lien. The State could not discharge its burden of proof without
necessarily establishing the identity of the other person or entity. Based on the analysis in
Janecka, I believe that Appellant was denied a requisite item of notice and that the court erred
when it refused to quash the indictment on that ground. See Janecka, 739 S.W.2d at 820. 
          Whether that denial prejudiced Appellant's substantial rights by impacting his ability to
prepare a defense, the second prong of the test for reversible error, requires an examination of the
record. See id. My disagreement with the majority opinion is in its failure to adequately discuss
the facts in ruling on the second prong.
          The crux of Appellant's trial strategy was to admit that he forged the release of lien but
deny that he intended to harm or defraud anyone. He claimed that he forged and filed the release
with the intent to facilitate paying his debts, not with the intent to defraud or harm anyone else. 
One cannot read the record without concluding that Appellant's intent was the most critical issue
to the defense and the pivotal issue in the case from the State's viewpoint. 
          Appellant emphasized the importance of the intent element during voir dire, attempted to
show through cross-examination of the State's witnesses that no one had lost any money as a result
of the forgery, and testified to his lack of intent to harm or defraud when he forged the release. 
Two officers of the Burleson bank stated that they did not believe Appellant intended to harm
anyone when he forged the release, but surmised that was merely trying to pay his debts. 
Appellant argued that the banks and the title company could not have been harmed because the
forged release was a legal "nullity." He made two motions for an instructed verdict based on the
State's failure to prove that he intended to defraud or harm another by forging the release.           Countering this argument, the State pointed out in its cross-examination of Appellant that
"somebody" had to lose if he was to gain from the forgery. The president of the Burleson bank
admitted that the bank paid more for the Schneider note, thinking it was a first-lien note, than it
would have if it had known the release was a forgery. The State also argued that Appellant knew
the banks and the title company were harmed by the forgery because he had offered to indemnify
them in his letter admitting the forgery.       
          Despite the critical importance of the intent element, the record does not reflect that
Appellant's defense was hampered or impacted in any way by the court's error in not requiring
the State to name the persons or entities that he intended to defraud or harm by forging the release. 
Appellant's letter admitting the forgery conclusively shows that he knew that only three entities
could have been harmed by the forgery: both banks and the title company. See id. at 821. 
Considering the record as a whole, Appellant's defense did not hinge on the identity of those
intended to be defrauded or harmed as much as it did on the fact that no one had been defrauded
or harmed by the forgery. See id. Appellant has not demonstrated from the record that his
defense would have been facilitated or made any easier if the State had been required to allege in
the indictment the identity of those intended to be defrauded or harmed. 
          Although the court erred, in my opinion, when it denied Appellant an item of notice
required to prepare his defense, that denial did not prejudice his substantial rights by impacting
his ability to prepare a adequate defense. See id. For these reasons, I concur in the disposition
of the first point and the appeal. 
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Opinion delivered and filed February 14, 1991
Do not publish                                                   



 that resulted in a credit to Berry's account was sufficient evidence
to prove the amount was owed. Berry then had the burden of disproving the correctness of this
amount. See Palmer v. Kamin, 238 S.W.2d 216, 217 (Tex. Civ. App.—Austin 1951, writ ref'd). 
Berry failed to meet this burden. Therefore, there was sufficient evidence for the court to
conclude the amount was owed.
      Berry further contends that, even if Federal has proved the three elements required, the
evidence is still insufficient with regard to the amount owed because Federal attached only 48 of
the 124 invoices to Federal's petition. Berry claims that in a case in which a plaintiff attaches to
its petition invoices allegedly due, the accounts attached to the petition control rather than the
allegations in the petition. However, the cases that Berry relies upon are cases on a sworn account
in which the judge must depend upon only what is in the petition and is attached to the petition
when deciding whether to grant summary judgment. See, e.g., Dean v. K-C Fuel Co., 524
S.W.2d 805 (Tex. Civ. App.—Austin 1975, no writ); W.A. Williams Constr. Co. v. C.W.
Hubbard Electric Co., 658 S.W.2d 796 (Tex. App.—Beaumont 1983, no writ); Gallini v.
Whelan, 625 S.W.2d 755 (Tex. App.—San Antonio 1981, no writ). This is not a suit on a sworn
account, but a common-law suit on account. The court considered the evidence presented at trial
rather than the invoices attached to the petition to make its decision. Therefore, the invoices
attached to Federal's petition are not controlling. The evidence presented at trial is sufficient to
support the finding that Berry owed Federal $91,500.12. The first point is overruled.
      In his second point, Berry contends that the court erred in finding that there was no supply
contract between Federal and Berry. Berry contends that the letter from Stuart to Berry, dated
November 4, 1987, was a contract. The letter stated that Federal would supply Berry a minimum
of 1,000 tons per month of oilfield barite. To have a contract, there must be either mutuality of
obligations or valid consideration. Texas Gas Utility Co. v. Barrett, 460 S.W.2d 409, 412 (Tex.
1970). The consideration or obligation may consist of either a benefit to the promisor or a
detriment to the promisee. Tripp Village Joint Venture v. MBank Lincoln Centre, 774 S.W.2d
746, 749 (Tex. App.—Dallas 1987, writ denied). Berry claims the mutuality of obligations of the
contract were that Federal would supply Berry a minimum of 1,000 tons of barite per month and,
in return, Berry would purchase all of his materials from Federal. Berry's obligation is not stated
in the letter. The letter also does not indicate a time and place for delivery. The letter, therefore,
is not a complete contract and parol evidence may be considered to determine the intent of the
parties. Shwiff v. Priest, 650 S.W.2d 894, 900 (Tex. App.—San Antonio 1983, writ ref'd. n.r.e.) 
To prove mutuality of obligations, Berry testified that at the time the letter was written, he agreed
to purchase all his materials from Federal. However, conflicting testimony regarding the
agreement was introduced by Berry's own fact witness, Robert Minyard. Minyard, who had
worked for Oilfield Distribution Services, Inc., testified that Berry purchased various products,
including barite, from Oilfield during 1987 and 1988. As a result, the court could have chosen
not to believe Berry's testimony regarding his agreement to purchase barite only from Federal. 
From Minyard's testimony the court could have concluded that there was no agreement by Berry
to purchase only from Federal, as Berry purchased from companies other than Federal after the
letter was written. Without the mutuality of obligations, the letter was not a contract. There was
sufficient evidence for the court to conclude that there was no mutuality of obligations and,
therefore, no contract. Point two is overruled.
      Having overruled points one and two, we need not consider Berry's remaining points. There
was sufficient evidence for the court to find that Berry owed Federal $91,500.12. for goods sold
and delivered and that no supply contract existed between Berry and Federal. 
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 3, 1993
Do not publish