United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 8, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 06-50363

———————————————

In the matter of: CHARLES FREDERICK TRAUTMAN; CAROL JEAN
TRAUTMAN, Debtors.

------------------------------------------------------------

MARSHA G. MILLIGAN,

Appellee,

versus

CHARLES FREDERICK TRAUTMAN; CAROL JEAN TRAUTMAN,

Appellants.

--------------------
Appeal from the United States District Court
for the Western District of Texas
--------------------

Before HIGGINBOTHAM, WIENER, and PRADO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Charles Trautman surrendered his whole-life insurance policy, receiving a check for the final cash value. He then filed for bankruptcy, seeking to exempt the check from the estate. Holding that the cash from a surrendered whole-life policy is not exempt under Texas law, we affirm.

I

Husband and wife Charles and Carol Trautman got into financial trouble. In 2004, Charles surrendered a whole-life insurance policy that he owned, a policy which insured his life with the

death-benefit payable to Carol.  The policy had a gross cash surrender value of about $95,000 and an outstanding loan balance of about $67,000, yielding a $27,913 difference.  Charles received a check for that amount but did not cash it.  Soon after the couple filed for bankruptcy.  After electing to exempt property from the estate under Texas law rather than federal law,[1] the Trautmans listed as an exemption the uncashed check.  Trustee Marsha Milligan objected.  After a hearing, the Bankruptcy Judge denied the objection, upholding the exemption.  Milligan appealed, and the district court reversed.  The Trautmans appeal, and we review this purely legal question *de novo*.

## II

This case centers on Texas Insurance Code § 1108.051, which provides:

> (a) ...[T]his section applies to any benefits, including the cash value and proceeds of an insurance policy, to be provided to an insured or beneficiary under:
>
>> (1) an insurance policy...issued by a life, health, or accident insurance company, including a mutual company or fraternal benefit society...
>
> (b) Notwithstanding any other provision of this code, insurance...benefits described by Subsection (a):
>
>> (1) inure exclusively to the benefit of the person for whose use and benefit the insurance...is designated in the policy...; and
>
>> (2) are fully exempt from:

---

[1] *See generally Walden v. McGinness (In re Walden)*, 12 F.3d 445, 448 (5th Cir. 1994) (discussing exemptions).

>> (A) garnishment, attachment, execution, or other seizure;

>> (B) seizure, appropriation, or application by any legal or equitable process or by operation of law to pay a debt or other liability of an insured or of a beneficiary, either before or after the benefits are provided; and

>> (C) a demand in a bankruptcy proceeding of the insured or beneficiary.

This court must interpret the statute as a Texas court would. In Texas, giving effect to the legislature's intent is the cardinal rule.[2] There are no Texas or federal cases directly on point.

This case is created by the peculiarities of whole-life policies. Term-life policies are simple – the owner pays a regular premium to the insurer, who pays a death-benefit to the beneficiary on the death of the insured if the premiums were current. With whole-life policies, the owner pays the insurer more than the cost of premiums. The excess money goes into a sort of interest-bearing savings account, against which the owner can borrow money or pay the premiums if he ever chooses to pay less than the regular premium. As long as the policy exists, if the insured dies the beneficiary receives a death-benefit.[3] Critical here, the owner can also withdraw the entire cash value, surrendering the policy. Under Texas law, it's clear that money paid to the debtor-

---

[2] *See LaSalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837, 839 (5th Cir. 2002).

[3] As Milligan noted at oral argument, usually there is a flat death-benefit paid upon the insured's death – there is no separate payment of the cash value. The cash value is subsumed into that benefit as an actuarial matter.

beneficiary of a term-life policy - as long as it can be traced to that source - is exempt.  The question here is whether money paid to the owner of a surrendered whole-life policy - if it can be traced to that source, as it can here - is exempt.  We conclude that it is not.

First, we look to the text.  Parsing the text, we see that "benefits," while not explicitly defined, are either "cash value...of an insurance policy" or "proceeds of an insurance policy" that are "to be provided to an insured or beneficiary...."  Such "benefits" "inure exclusively to the benefit of the person for whose use and benefit the insurance...is designated in the policy or contract" and cannot be garnished, seized, or demanded in bankruptcy.  Thus, § 1108.051 protects "benefits," and we must determine whether the check here represents "benefits."  It does not - even though on first glance it looks like "cash value...of an insurance policy" - because "benefits" are things "to be provided to an insured or beneficiary," and the cash from a surrendered whole-life policy goes not to the (former) insured or (former) beneficiary, but the (former) owner of the policy.  Charles argues implicitly that the money went to him as a final "benefit" payable to him as the insured, but the check went to him as the owner of the policy, not the insured.[4]  That "benefits" "inure exclusively

---

[4] Charles also points to the "before or after the benefits are provided language," but that language doesn't define "benefits" in the first place.  It states only that, once "benefits" are created, they are protected as long as they're traceable.

4

to the benefit of the person for whose use and benefit the insurance...is designated in the policy" buttresses our conclusion because the surrendered check goes not to the person "whose use and benefit the insurance...is designated in the policy" - that is, the beneficiary and maybe the insured - but the owner.[5] In sum, when the owner of a whole-life policy surrenders the policy, the funds are not protected by § 1108.051.[6]

Second, the statutory history confirms our analysis and explains what "cash value...of an insurance policy" actually means. Before a 1991 amendment to the predecessor of § 1108.051 which added the term "cash values,"[7] courts did not exempt even the cash value of *existing* whole-life policies because such policies were essentially savings accounts to which debtors had constant access.[8] Hence creditors could seize whole-life policies, destroying them. Texas, presumably desiring to protect the named, contingent

---

[5] One could argue that the owner is a person for whose "use" a whole-life policy is designated, hence certain things that "inure exclusively" to the owner - the cash value of a surrendered policy and, while the policy exists, the privileges of borrowing against the cash value and applying the cash value to payment of future premiums - are exempt. This argument, however, fails because "benefits" are things "to be provided to an insured or beneficiary," not an owner. Although the definition of "use" may not be clear, we decline to read it a way that creates conflict with this latter phrase.

[6] Timing is not critical here. Had Charles surrendered the policy after bankruptcy, the money he received would then not be exempt from garnishment, seizure, or future bankruptcy. Protection ceases when the policy is surrendered.

[7] *See* Act of May 22, 1991, 72d R.S. Ch. 609 § 1, 1991 Tex. Gen. Law 2217. The phrase containing "cash values" has since been reworked, without a change in meaning, to be the current phrase containing "cash value."

[8] *See In re Brothers*, 94 B.R. 82 (Bankr. N.D. Tex. 1988).

beneficiaries of existing whole-life policies, amended the statute to include "cash values." As a result, debtors cannot now garnish, seize, or claim in bankruptcy the cash value of an existing policy – a blessing to contingent beneficiaries, who now *may* later receive a death-benefit.[9] But presumably Texas did not mean to exempt money from a surrendered whole-life policy, money a beneficiary will certainly never see. So "cash value" means something, just not what the Trautmans think.

Third, we note the perils of the contrary conclusion. Exempting all money traceable to a surrendered whole-life policy would allow people to use such policies merely to avoid creditors. People could place their money in a whole-life policy with the cheapest possible premium, naming as a beneficiary someone to whom they'd want money in a normal savings account to go should they die. Sometime later – presumably even after only a few days – they could withdraw some of the money, or even all of it, forever shielding the money from creditors. That can't be the law. Less insidiously, someone desiring to have a whole-life policy actually for insurance reasons nonetheless could put her extra money into the policy simply to shield it from creditors. That also can't be the law.

---

[9] Of course, a contingent beneficiary will receive nothing if the policy owner later surrenders the policy, but the amendment to § 1108.051 protects the many, other beneficiaries who eventually receive benefits.

6

The Trautmans cite *In re Young*,[10] a bankruptcy case from Texas that the district court realized was one of the only useful cases. In *Young*, the bankruptcy court exempted two assets under the post-1991 predecessor to § 1108.051: 1) the cash value of an existing whole-life policy owned by the debtor; and 2) "life insurance proceeds access accounts,"[11] created before the petition date by the insurance company to hold the death-benefit proceeds paid to the debtor on the death of the debtor's husband. But these two assets are the type paradigmatically protected by § 1108.051 - existing whole-life policies and proceeds from a term-life policy. The Trautmans urge that the money from their surrendered policy is, like the latter, "proceeds" from a previously-existing policy. But the value of a surrendered whole-life policy isn't "proceeds" like that in *Young* - or in general - because there was never a proceeds-producing event, like death, sending money to the beneficiary, only the surrender of a policy, sending money to the (former) owner.[12] Although one might say that the term-life policy no longer "existed" at the time of bankruptcy in *Young*, just like the whole-life policy no longer "existed" after the Trautmans surrendered it, in *Young* there was still a beneficiary who was paid under the terms

_____

[10] 166 B.R. 854 (Bankr. E.D. Tex. 1994).

[11] These accounts are essentially interest-bearing checking accounts held with the insurer.

[12] The Trautmans also point to TEX. PROP. CODE § 41.001(c), which exempts for six-months the "proceeds" of a sale of a homestead, for the proposition that the "sale" of their policy yielded "proceeds" defined as "money from the sale of an asset." That just isn't what "proceeds" means here.

of the policy, whereas here nothing was given "to an insured or beneficiary."  In other words, there is a difference between a policy dissipating because the insured died and a policy dissipating because its owner surrendered it - the statute countenances the former, not the latter.

Because money from a surrendered whole-life policy is not exempt under § 1108.051, we AFFIRM.