REVISED OCTOBER 1, 2008

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 12, 2008

Charles R. Fulbruge III
Clerk

No. 06-21004

In The Matter Of: ANDRES ALEJANDRO SOZA; MARY RACHEL C BUZO

Debtors

-----------------------------------------------------------------------------------------

ANDRES ALEJANDRO SOZA; MARY RACHEL C BUZO

Appellees

v.

JOSEPH M HILL

Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and WIENER, and CLEMENT, Circuit Judges.

EDITH H. JONES, Chief Judge:

The question presented in this bankruptcy appeal is whether an annuity purchased by a debtor couple the day before they sought bankruptcy relief is, under the facts here presented, exempt under Texas law, Tex. Ins. Code Ann. § 1108.051, or non-exempt because it was "a premium payment made in fraud of a creditor . . . ." Tex. Ins. Code Ann. § 1108.053. According to the debtors'

repeated representations to the bankruptcy and district courts, this annuity was purchased not simply "to maximize the debtors' exemption claims" but to manipulate an inheritance that the debtor Andres Alejandro Soza ("Soza") may ultimately share with his siblings. Because the debtors' purpose in purchasing this annuity had nothing to do with the rehabilitative goal of Texas's exemption laws, they could not legitimately claim the exemption. Accordingly, the judgment of the district court, reversing the bankruptcy court's denial of exemption, must itself be reversed, and the case is remanded for further proceedings.

On October 13, 2005, Soza and his wife, Mary Rachel C. Buzo, transferred $30,000 into a Mutual of Omaha annuity. The next day they filed a voluntary Chapter 7 bankruptcy petition.[1] Joseph Hill was appointed Trustee of their bankruptcy estate. The debtors' bankruptcy schedules listed just under $30,000 in unsecured debt and $340 in non-exempt property. The debtors identified the annuity as an asset valued at $30,000, and they claimed an exemption pursuant to § 1108.051 of the Texas Insurance Code.

The trustee objected to the exemption because the statute does not apply to "a premium payment made in fraud of a creditor." Tex. Ins. Code Ann. § 1108.053. Relying on the debtors' petition and schedules, the trustee argued that their conversion of non-exempt property into an exempt annuity on the eve of bankruptcy amounted to "constructive fraud" detrimental to the creditors. In

---

[1] The debtors filed for bankruptcy just before the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") came into effect. Pub. L. No. 109-8, 119 Stat. 23 (2005) (codified as amended in scattered sections of 11 U.S.C.). BAPCPA governs cases filed on or after October 17, 2005. Since the debtors filed their bankruptcy petition before October 17, 2005, pre-BAPCPA law governs this case.

response, the debtors contended that the law permits them to maximize their exemptions, and there was no proof that they intended to defraud the creditors.

At the hearing on the trustee's objection, the debtors asserted for the first time that the money with which they purchased the annuity had recently been inherited from Soza's father. Their attorney represented to the court that the debtors used the inheritance to purchase the annuity for safekeeping until they could decide how the inheritance was to be distributed among Soza and his siblings. The attorney said his clients feared that unless the inheritance was placed out of reach of the creditors by means of an annuity, the trustee would attempt to litigate the debtors' share of ownership or would pursue Soza's siblings for the transfer of their shares. Alternatively, counsel feared he would have to delay the bankruptcy filing by one year to avoid the fraudulent transfer provision of the Bankruptcy Code. 11 U.S.C. § 548(a)(1) (2005), amended by Pub. L. No. 109-8, § 1402, 119 Stat. 23, 214 (effective Oct. 17, 2005).

The bankruptcy court and counsel for the trustee were taken aback by these representations, which were contrary to the debtors' sworn schedules identifying the annuity as their property. The court rejected the debtors' untimely attempt to offer the will and Soza's testimony about it. Nevertheless, all parties recognized a looming issue over the true ownership of the inheritance. The court proceeded, however, to adjudicate the objection without reference to the inheritance claim. The court held that § 1108.053 of the Texas Insurance Code, although somewhat ambiguous, proscribes constructive as well as actual fraud on creditors. It found, based on the pleadings and undisputed facts, that the debtors' conversion of non-exempt property into an exempt annuity on the eve of bankruptcy amounted to constructive fraud. The court denied the exemption.

3

The debtors appealed to the district court, reiterating their claim about the inheritance in their brief:

> The check was received in August 2005 and would have been shared with [Soza's] eight siblings and the children of the deceased brother, but with the uncertainty of the October changes to the bankruptcy law, [Soza] did not want to delay the bankruptcy a year to avoid the possibility of the trustee trying to undo payments to family members.

The district court upheld the bankruptcy court's refusal to consider this as an untimely contention, but it reversed the bankruptcy court and approved the exemption under Texas law. Like the bankruptcy court, the district court found no explicit textual guide to whether the statute depends on actual or intended fraud of a creditor or whether "something less than intent is sufficient" to violate the provision. Soza v. Hill (In re Soza), 358 B.R. 903, 907 (S.D. Tex. 2006). The court's reasoning proceeded in three steps. First, the court noted that the timing of the annuity purchase, standing alone, was not sufficient to prove actual intent to defraud creditors. Second, the court analogized the "constructive fraud" interpretation of the statute with the Texas Uniform Fraudulent Transfer Act ("TUFTA") provisions that invalidate a debtor's transfers made for less than reasonably equivalent value. See Tex. Bus. & Com. Code Ann. § 24.005(a)(2). Because the annuity here was purchased for full value, constructive fraud as defined in TUFTA could not exist. Third, the court held that in the absence of a fiduciary duty relationship arising from other circumstances, the common law doctrine of constructive fraud does not apply to debtor-creditor relations in Texas. Relying, finally, on the principle that Texas interprets debtors' exemptions broadly, the court concluded that even if constructive fraud is covered by § 1108.053, the trustee had not borne his burden

4

of proof.

Now finding themselves the appellees, the debtors no longer assert that the payment for the annuity sprang from an inheritance in which Soza owns a potentially small share. Instead, they vigorously defend the district court's opinion and criticize the trustee for having failed to present evidence to support his attack on the exemption. The debtors do not, however, disavow their counsel's representation to both lower courts that the annuity was purchased not to provide them a future stream of income, but to remove its corpus from the bankruptcy court in order to avoid the uncertainty of bankruptcy litigation involving them or Soza family members. This clever strategy, taken together with other facts, provides a more complex backdrop for application of the Texas annuity exemption laws than the simple eve of bankruptcy transfer on which the bankruptcy and district court opinions were predicated. Although these circumstances might not sustain a finding of actual intent to defraud the debtors' creditors, and the trustee did not so argue in the lower courts, they highlight the importance of determining whether the exception to annuity exemptions for a "premium payment made in fraud of a creditor" includes intentional fraud as well as something less than intentional fraud.

At first glance, what the Legislature intended to describe as "fraud of a creditor" seems unclear in the context of life insurance policies and annuities obtained by debtors. There is no controlling Texas case law to provide guidance.[2] Read in context with other Texas fraudulent transfer statutes, there is little doubt that § 1108.053 must include intentional fraud as well as conduct less than intentional fraud. The Texas legislature added the "in fraud of a creditor" exception to the Texas Insurance Code's exemption statute for life insurance and annuity benefits in 1991. See Act of June 15, 1991, ch. 609, § 1, 1991 Tex. Sess. Law Serv. 609 (recodified at Tex. Ins. Code. Ann. § 1108.053). This was two years before the exemption was broadened to include annuity contracts purchased by an individual. See Act of Sept. 1, 1993, ch. 685, § 20.20, 1993 Tex. Sess. Law Serv. 685 (recodified at Tex. Ins. Code. Ann. § 1108.051). As of 1991, at least three fraudulent conveyance provisions in state law required a showing of actual intent to defraud. One of these appears in the Texas Property Code,

---

[2] The district court discussed three non-bankruptcy cases involving the predecessor to § 1108.051: Marineau v. Gen. Am. Life Ins. Co., 898 S.W.2d 397 (Tex. Ct. App. 1995), Sun Life Assurance Co. of Canada v. Dunn, 134 F. Supp. 2d 827 (S.D. Tex. 2001), and Leibman v. Grand, 981 S.W.2d 426 (Tex. Ct. App. 1998). They are all clearly distinguishable from this case and none of them assists us with interpreting the phrase "in fraud of a creditor."

Marineau addressed whether the proceeds of an insurance policy that was purchased with embezzled funds could be placed in a constructive trust for the owner of the embezzled funds. The Texas exemption statute then applicable did not even contain an "in fraud of a creditor" exception. See Marineau, 898 S.W.2d at 401 (citing Act of Mar. 12, 1987, ch. 5, § 1, 1987 Tex. Sess. Law Serv. 5).

Similarly, Sun Life addressed whether the proceeds of an insurance policy could be placed in a constructive trust for a beneficiary of the policy whose share of proceeds was wrongfully reduced in violation of a divorce decree. Sun Life never mentions, let alone interprets, the "in fraud of a creditor" exception at issue here.

Finally, Leibman addressed whether sufficient evidence was presented at trial to establish that a debtor had made annuity premium payments in fraud of a creditor. The court determined that there was sufficient evidence to uphold the trial court's finding that the debtor had made payments with intent to defraud his ex-wife. The court provided no analysis of the phrase "in fraud of creditor."

which prohibits a debtor from converting non-exempt personal property into exempt property "with the intent to defraud, delay, or hinder" a creditor. Tex. Prop. Code Ann. § 42.004(a) (emphasis added).[3] Since at least 1987, the Texas Family Code has provided that an agreement between spouses to partition marital property "is void with respect to the rights of a pre-existing creditor whose rights are intended to be defrauded by it." Tex. Family Code Ann. § 4.106(a) (emphasis added). Significantly, Texas adopted the TUFTA in 1987, and it states that a debtor's transfer "is fraudulent as to a creditor" if made with "actual intent to hinder, delay, or defraud any creditor of the debtor" or if made for a lack of "reasonably equivalent value" under certain additional conditions. Tex. Bus. & Comm. Code Ann. § 24.005(a)(1)-(2) (emphasis added). Under TUFTA, transfers made with either actual intent to defraud a creditor or something less than actual intent (i.e., transfers made "without receiving a reasonably equivalent value") are included as "fraudulent" transfers.

The language of these sister statutes indicates that the Texas Legislature clearly knew how to distinguish between provisions defining as fraudulent a transfer made with intent to defraud a creditor and provisions defining a lesser standard than intent to defraud. Because Tex. Ins. Code § 1108.053 uses the general phrase "in fraud of a creditor" rather than specific language requiring intent to defraud we conclude that it encompasses both intentional fraud and conduct less than intentional fraud. The Texas Supreme Court has endorsed this approach to interpretation in holding that "[i]t is a rule of statutory construction that every word of a statute must be presumed to have been used

---

[3] The "intent to defraud" language has been in § 42.004(a) since at least 1984. See Act of Jan. 1, 1984, ch. 576, § 1, 1983 Tex. Sess. Law Serv. 3524.

for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose." Laidlaw Waste Systems (Dallas), Inc. v City of Wilmer, 904 S.W.2d 656, 659 (Tex. 1995) (internal quotations and citations omitted).

Still, exactly what conduct less than intentional fraud amounts to fraud on creditors under § 1108.053 is unclear. The parties and the courts below repeatedly describe this "something less than intention" standard as "constructive fraud." This term is a practical shorthand, but, since it appears nowhere in the statutes, it lacks substantive content and is not susceptible to precise definition.[4] The TUFTA describes one species of "constructive fraud" in stating that transfers made "without receiving a reasonably equivalent value" are deemed in fraud of creditors. See also Tex. Bus. & Comm. Code Ann. § 24.006(a). Section 1108.053 of the Texas Insurance Code contains no such limitation, nor does § 1108.053 reference TUFTA's definition of "constructive fraud." There is, therefore, no reason to conclude that the more general language of § 1108.053 is limited by TUFTA's definition of "constructive fraud." In fact, it would be improper to construe § 1108.053 by attributing a limitation that appears only in another statutory provision. The Texas Supreme Court so held in Laidlaw: "When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded." 904 S.W.2d at 659.

---

[4] Because "constructive fraud" appears neither in § 1108.053 nor in Texas's other statutes regarding fraud on creditors, it seems highly unlikely that the Texas Legislature intended to refer to common law "constructive fraud" cases as an interpretive standard for "in fraud of a creditor."

Ultimately, Texas courts will have to determine how much less than actual intent to defraud suffices to deny exemptions for insurance policies and annuities under § 1108.053. For present purposes, we glean some assistance from the non-exclusive list of eleven factors, commonly known as "badges of fraud", that courts may consider in determining whether a debtor actually intended to defraud creditors under TUFTA.[5] It may appear contradictory to consider facts used to infer actual intent to defraud in order to determine "constructive" fraud. Any contradiction, however, is illusory. Factors relevant to determining actual intent to defraud, a higher culpability standard, should be equally probative where something less than actual intent will suffice. Factors relevant to determining actual intent to defraud, a higher culpability standard,

---

[5] Section 24.005(b) of the Texas Business & Commerce Code states:

In determining actual intent under [§ 24.005(a)(1)], consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

should be equally probative where something less than actual intent will suffice. When analyzing facts under TUFTA, this court has noted that "[s]ince direct proof of fraud often is not available, courts may rely on circumstantial evidence to establish the fraudulent intent." Roland v. United States, 838 F.2d 1400, 1402-03 (5th Cir. 1988). Not all, or even a majority, of the "badges of fraud" must exist to find actual fraud. Indeed, "[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." Roland, 838 F.2d at 1403.

Like TUFTA, the Bankruptcy Code also unwinds transfers made "with actual intent to hinder, delay or defraud" creditors, 11 U.S.C. § 548(a)(1), and may deny discharge on similar grounds. 11 U.S.C. § 727(a)(2). In this connection, courts have identified various "badges of fraud" that tend to evidence a transfer made with intent to defraud under § 548 and §727:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.

Chastant v. Chastant (In re Chastant), 873 F.2d 89, 91 (5th Cir. 1989) (quoting Schmit v. Schmit (In re Schmit), 71 B.R. 587, 590 (Bankr. D. Minn. 1987)). See also, e.g., Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254-55 (1st Cir. 1991); Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2d Cir. 1983); FDIC v. Sullivan (In re Sullivan), 204 B.R. 919, 940 (Bankr. N.D.

Tex. 1995); In re Moore, 177 B.R. 437, 442 (Bankr. N.D. N.Y. 1994); Beckman v. Staats (In re Beckman), 104 B.R. 866, 870 (Bankr. S.D. Ohio 1989).

Taking all the surrounding circumstances in this case into consideration, several of the "badges of fraud" are evident here. We conclude that, even if actual intent to defraud was lacking, the debtors' annuity purchase constituted a premium payment made "in fraud of a creditor." Tex. Ins. Code § 1108.053. They purchased the annuity on the eve of bankruptcy. Assuming the payment came from their non-exempt property, the annuity was in an amount that would have covered all of the debtors' listed debts, and the purchase deprived the creditors of all but $340 in non-exempt assets.

Significantly, the debtors retained full control of the property — an annuity can always be cashed out. And while this feature is true of all annuities, and thus would not ordinarily be proof of any fraud, here, the temporary and contingent nature of the purchase was conceded. The debtors claimed the annuity as their property on the bankruptcy schedules, yet their counsel assured both lower courts, to the contrary, that the payment was funded by an inheritance to which Soza's entitlement was uncertain. Their counsel also represented to both lower courts that the annuity was purchased in order to place litigation over Soza's and his siblings' property interests in the inheritance beyond the reach of the bankruptcy court.[6]

In 1993, Texas law was modified for the first time to permit personal annuities to be shielded from the claims of creditors. Texas cases have to date

---

[6] In ruling based on the "untimely" assertion by the debtors of their dubious ownership of the inheritance with which they purchased the annuity, we are not deciding the question of ownership. That remains to be decided on remand. Rather, we deem the admissions to the lower courts as binding on what the debtors intended as the purpose of this annuity.

upheld annuities sharing the characteristics that they were not self-settled and they were intended to provide payments for the debtors and their families in the future. See In re Foster, 360 B.R. 210, 215 (Bankr. E.D. Tex. 2006) (exempting annuity created to disburse state lottery winnings); In re Alexander, 227 B.R. 658, 661 (Bankr. N.D. Tex. 1998) (exempting annuity created to pay out structured tort settlement). Not so here. The purpose of these debtors' purchase was to remove a disputed inheritance from an inquiry, necessary to bankruptcy administration, that would have determined the debtors' property rights in that inheritance. The annuity was a sham to stave off litigation, not a shield authorized by Texas law to enable the debtor to gain a fresh start.[7]

No doubt Texas law encourages the broad construction of its exemption laws, especially those provisions that lack limitations based on fraud of creditors. See, e.g., NCNB Tex. Nat'l Bank (In re Volpe), 943 F.2d 1451, 1453 (5th Cir. 1991) ("Texas courts apply a liberal rule of construction to state exemption statutes.") (citing cases); Hickman v. Hickman, 234 S.W.2d 410, 414 (Tex. 1950) ("[O]ur exemption statutes should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant."). No doubt courts must recognize that some pre-bankruptcy planning is permissible, and that the mere conversion of assets from exempt to non-exempt property on the eve of bankruptcy does not by itself suffice to prove an intent to defraud creditors. First Tex. Sav. Assoc., Inc. v. Reed (In re Reed), 700 F.2d 986, 990-91

---

[7] We do not here imply or hold that other types of annuities would fail the "in fraud of a creditor" test. This case is limited to its particular, above-described facts.

(5th Cir. 1983).[8] The exemption provided by the instant Texas statute, however, contains its own limitation designed to prevent fraud on creditors, and its standard is set at something less than intent to defraud. Here, there is considerably more than mere timing to condemn the expedient use of an annuity to thwart the bankruptcy court from determining the extent of the debtors' interest in property.

CONCLUSION

Under Texas Insurance Code § 1108.053, the annuity purchased by these debtors represented a payment made in fraud of a creditor, and the debtors could not claim an exemption for the annuity. On remand, however, the bankruptcy court will have to explore the extent to which Soza has an ownership interest in the alleged inheritance.

REVERSED and REMANDED.

---

[8] Note that in In re Reed actually dealt with the denial of discharge under the Bankruptcy Code, for which actual intent to defraud creditors is the standard. 11 U.S.C. § 727(a)(2). In re Reed expressly declined to consider whether under Texas property law, an exemption would be denied for the acquisition of personal property acquired with the intention of defrauding creditors. In re Reed, 700 F.2d at 990 n.2 (citing predecessor to Tex. Prop. Code Ann. § 42.004(a)).

No. 06-21004

WIENER, Circuit Judge, Specially Concurring:


I concur in the result reached by the panel majority, but I write separately because, with respect, I disagree with part of its methodology for getting there. Both the panel majority and I agree that applicability of section 1108.053 of the Texas Insurance Code is not limited to instances of actual fraud, i.e., intentional fraud, principally because the words used in the Texas Family[1] and Property[2] Codes to limit their coverages to intentional fraud are absent from the Insurance Code.[3] It is at this point, however, that the method of statutory construction I would employ and the substantive content I would give to the Insurance Code's "in fraud of a creditor" provision diverge from the panel majority's method and content.

The panel majority relies on three state statutes — the Texas Uniform Fraudulent Transfers Act ("TUFTA"),[4] the Texas Family Code, and the Texas Property Code — to determine how the non-intentional "fraud of a creditor" (which we agree is embraced by the Insurance Code) should be defined. But it is obvious to me that neither the Texas Property Code nor the Texas Family Code offers any guidance here because they address only actual, i.e., intentional, fraud and can therefore tell us nothing about the definitional elements of non-intentional fraud for purposes of the Insurance Code — the core issue in this case.

---

[1] TEX. FAM. CODE ANN. § 4.106(a) (Vernon 2007).

[2] TEX. PROP. CODE ANN. § 42.004(a) (Vernon 2007).

[3] TEX. INS. CODE. ANN. § 1108.053 (Vernon 2007).

[4] TEX. BUS. & COM. CODE ANN. § 24.005(a) (Vernon 2007).

14

The only Texas statute among the three relied on by the panel majority that addresses anything other than actual (intentional) fraud is TUFTA. Therefore, of the statutes cited by the panel majority, only TUFTA is even potentially informative of the meaning of constructive or non-intentional "fraud of a creditor." Yet TUFTA's definition of "fraudulent as to a creditor" expressly recognizes only (1) intentional fraud (not applicable here) and (2) a transfer lacking "reasonably equivalent value" (plus other factors).[5] The panel majority nevertheless purports to use TUFTA's indicia of intent to cobble together a version of non-intentional fraud,[6] while ignoring the definition of non-intentional fraud expressly provided in TUFTA — a transfer without reasonably equivalent value. Either TUFTA should be used to inform the analysis, in which case we should accept its definition of non-intentional fraud for purposes of the Insurance Code, or it should not be so used, in which case we would have no alternative but to resort to the common law. We cannot do both because, logically, TUFTA cannot simultaneously be both (1) the panel majority's starting point and (2) the point at which the panel majority departs from TUFTA. Yet the panel majority's opinion schizophrenically uses TUFTA both ways at once.

---

[5] See id.

[6] As the panel majority seems to acknowledge by saying "exactly what conduct less than intentional fraud amounts to fraud on creditors under section 1108.053 is unclear . . . . Ultimately Texas courts will have to determine how much less than actual intent to defraud suffices to deny exemptions," this case was ripe for certification to the Texas Supreme Court. TEX. CONST. art. V, § 3-c; TEX. R. APP. P. 58. It is quizzical to me that it was not certified, given its clear fit into the certification jurisprudence. See Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997) ("Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response."). Because I agree with the result reached by the panel majority, and believe the Texas Supreme Court would as well, I do not insist that certification is required here, even though that would be my preference.

15

The panel majority's opinion tries to finesse this inconsistency by stating: "Section 1108.53 of the Texas Insurance Code contains no such limitation, nor does § 1108.53 reference TUFTA's definition of 'constructive fraud.'"[7] But this defeats the purpose of turning to TUFTA for guidance in the first place. The panel majority uses TUFTA's "fraudulent as to a creditor" to define "in fraud of a creditor" in the Insurance Code; but the exclusive definition of a non-intentional fraudulent transaction in TUFTA, is "[a] transfer made . . . without receiving reasonably equivalent value." So, unless the panel majority is willing simply to force-feed TUFTA's receiving-reasonably-equivalent-value genre into the Insurance Code, there is no constructive-fraud nexus to be found between the two statutes.

In response to this objection, the panel majority pronounces the Insurance Code's provision to be more "general" than TUFTA's. To me, it borders on circularity to say simply that the Insurance Code's provision is more "general"

---

[7] The panel majority also attempts to draw a distinction between "constructive fraud," a well-defined common law term, and a new, nebulous concept that it labels "less-than-intentional" fraud, which is neither fish nor fowl, i.e., neither common law constructive fraud nor TUFTA's statutory version of constructive fraud. It does this, in part, to claim that the common law definition of constructive fraud is inapposite because the Insurance Code's statutory regime has created a new creature of non-intentional fraud. As a result, Texas law, at least in this circuit, now has four flavors of fraud — (1) actual, (2) common law constructive, (3) TUFTA's lack-of-reasonably-equivalent-value-plus-other-factors, and (4) the Insurance Code's innominate fourth variety. As I explain below, I believe, as do commentators on statutory construction, see, e.g., 2B SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 50:3 (7th ed. 2008), that when a statute does not define a word, and that word has a well-accepted common law meaning, the legislature is presumed to have had that common law meaning in mind. Even if this were not so, I would find it questionable for the panel majority's opinion to manufacture an entirely new species of Texas fraud and then make no effort to situate it among the other three varieties, except to say that it is none of the other types, and that Texas will just have to work it out. If we decide that every Texas statute that uses the term "fraud," unqualified by the requirement that it be intentional, spawns a new species of fraud, Texas law is in for a multi-faceted treatment in this circuit.

than TUFTA's, so TUFTA does not restrict the Insurance Code.  For the panel majority to use TUFTA to inform its analysis of the Insurance Code, there must be a substantial degree of similarity — if not identity — between the two provisions.  To baldly declare that such exists, and then inexplicably dismiss any differences that actually exist, begs the question totally.

As I understand the panel majority's method of statutory interpretation, it proceeds thusly:  "(1) We don't know what X means, so to assist our understanding we turn to Y, which we assume is close to X; (2) Y requires that either A or B be present; (3) we conclude, though, that X requires neither A nor B because X is not sufficiently close to Y."  Can it really be maintained that Y has been used to meaningfully define X in this way? With X being the Insurance Code's "in fraud of a creditor," Y being TUFTA, A being intentional fraud, and B being a transfer made without receipt of reasonably equivalent value, the panel majority is exposed as saying that "we don't know what 'in fraud of a creditor' is, so we turn to TUFTA; TUFTA requires either actual intent to defraud or engaging in a transfer without receipt of equivalent value; ergo, absent actual intent, whatever else 'in fraud of a creditor' might mean, it does not require a transfer without equivalent value."  Go figure!

Again, I agree with the conclusion that Soza's premium was a payment made "in fraud of a creditor."  But I can only justify providing content to the Insurance Code's fraud provision by giving "fraud" its common law meaning, not by torturing other incompatible statutes.  Sutherland says:

> All legislation must be interpreted in the light of the common law and the scheme of jurisprudence existing at the time of its enactment.  Where there is a limitation by statute which is capable

of more than one construction the statute must be given that construction which is consistent with common law. And where an operative word is not defined in a statute the common law meaning controls.[8]

As there is reasonable doubt about what the Texas legislature meant to include when it provided an exception for "fraud of a creditor" in the Insurance Code — something the panel majority's opinion already acknowledges — I see the Texas common law as the only defensible starting place for interpreting the statute at issue.

Further, I do not believe that the phrase "of a creditor" creates a new term of art, but simply cabins the universe of frauds to which this exception to the Insurance Code's exemption applies. I conclude, therefore, that the interpretation of the "well-defined words and phrases in the common law" should comport with the presumption that "[c]ommon-law meanings are assumed to

---

[8] 2B SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 50:1 (7th ed. 2008) (footnotes omitted); see id. § 50:3 ("Although a statute may define the way in which a particular word is used, the common-law background and origin of the word may be useful to a proper understanding of the statute in cases of reasonable doubt."). If common law meanings of words can inform a statute's interpretation even when a definition of a term is provided by the legislature, they can, a fortiori, be used to define an undefined term. Texas appears to follow this approach. See TEX. GOV'T CODE ANN. § 312.002(b) (Vernon 2007)("If a word is . . . used as a word of art, the word shall have the meaning given by experts in the particular trade, subject matter, or art."); id. § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). This last point is important, of course, because Texas law governs how we interpret the Insurance Code. Milligan v. Trautman (In re Trautman), 496 F.3d 366, 368 (5th Cir. 2007) ("This court [in interpreting a Texas bankruptcy exemption in the Insurance Code] must interpret the statute as a Texas court would."). Formally, it appears Texas Government Code section 311.011 applies because section 1108.053 of the Texas Insurance Code was acted on by the 60th or subsequent Texas legislature. See Font v. Carr, 867 S.W.2d 873, 881 n.4 (Tex. App.–Houston 1993, writ dism'd w.o.j.).

apply even in statutes dealing with new and different subject matter . . . in the absence of evidence to indicate a contrary meaning."[9]

For openers, Texas common law recognizes that there are two types of fraud — "actual" and "constructive."[10] Actual fraud, which is not at issue in this case, requires "intentional breaches of duty that are designed to injure another or to obtain an undue and unconcientious [sic] advantage."[11] Constructive fraud (being all non-intentional varieties of actionable fraud and therefore clearly at issue here) involves "breaches that the law condemns as 'fraudulent' merely because they tend to deceive others, violate confidences, or cause injury to public interest."[12]

---

[9] 2B SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 50:3 (7th ed. 2008).

[10] See In re Estate of Kuykendall, 206 S.W.3d 766, 770 (Tex. App.–Texarkana 2006, no pet.); Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 702 (Tex. App.–Fort Worth 2006, pet. denied); Flanary v. Mills, 150 S.W.3d 785, 795 (Tex. App.–Austin 2004, pet. denied); Chien v. Chen, 759 S.W.2d 484, 494-95 (Tex. App.–Austin 1988, no writ). It would be farcical to maintain that the absence of the phrase "constructive fraud" from the statute itself precludes a conclusion that the Texas legislature intended for it to be included. Things called constructive are almost always unmentioned or incomplete; otherwise they would be actual, rather than constructive.

[11] Chien, 759 S.W.2d at 495 (emphasis in original).

[12] Id. (emphasis in original). I have left unaddressed the panel majority's problematic use of indicia of intent, the central inquiry of actual fraud, to determine whether constructive fraud is present. The panel majority says "[f]actors relevant to determining actual intent to defraud, a higher culpability panel standard, should be equally probative where something less than actual intent will suffice." This need not be the case. Although proscriptions of intentional fraud tend to police bad motives, proscriptions of constructive fraud police a set of non-intentional activities that nevertheless violate public policy. Not all constructive frauds are actual frauds, and it may be that not all actual frauds are constructive frauds (as under TUFTA's conceptualization of non-intentional fraud).

But even if all actual frauds are constructive frauds because proof of an intent to deceive is always violative of public policy, it does not follow logically that all half-actual frauds are constructive frauds. Indeed, the question why half-proof of intent (under some lesser combination of the "badges of fraud" than would be necessary for an inference of intent)

Texas courts have recognized in a general sense that "[c]onstructive fraud, as a concept, has fuzzier edges and is less susceptible of easy definition" than actual fraud.[13] Even though the contours of actual fraud have been neatly staked out,

> no such case has done the same for constructive fraud. Nor is such a case possible, because the whole need for a doctrine of constructive fraud rests on the lack of a well-defined common law tort to cover the conduct at hand. The best the [Texas] [S]upreme [C]ourt has been able to do is remark that "constructive fraud is the breach of some legal or equitable duty."[14]

Consistent with this definitional ambiguity, some Texas case law appears to have read this formulation of constructive fraud to require a confidential or fiduciary relationship.[15] A review of the cases reveals that, consistent with the

---

suffices to prove constructive fraud is left wholly unexamined in the panel majority's opinion.

    I have also left unaddressed the panel majority's use of the United States Bankruptcy Code to inform its elaboration of Texas state law without any demonstration of the persuasiveness of this authority. The flaw of this approach should be obvious to the reader. (Texas is not an "opt-out" state, so the debtors in question had the option of electing federal or state exemptions. Perry v. Dearing (In re Perry), 345 F.3d 303, 308 n.5 (5th Cir. 2003). As the debtors have relied on state exemptions under 11 U.S.C. § 522(b)(3) (Supp. V 2005), state law governs and we wear our Erie hats. Trautman, 496 F.3d at 369.

[13] Rosen v. Matthews Const. Co., Inc., 777 S.W.2d 434, 437 (Tex. App.–Houston 1989), rev'd on other grounds, 796 S.W.2d 692 (Tex. 1990).

[14] Id. at 437-38 (quoting Archer v. Griffith, 390 S.W.2d 735, 740 (Tex. 1965)).

[15] See, e.g., Hubbard v. Shankle, 138 S.W.3d 474, 483 (Tex. App.–Fort Worth 2004, pet. denied) ("Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship."); Jean v. Tyson-Jean, 118 S.W.3d 1, 9 (Tex. App.–Houston 2003, pet. denied) (same); In re Estate of Herring, 970 S.W.2d 583, 586 n.3 (Tex. App.–Corpus Christi 1998, no pet.) (same); Shwiff v. Priest, 650 S.W.2d 894, 902 (Tex. App.–San Antonio 1983, writ ref'd n.r.e.) (same); Thames v. Johnson, 614 S.W.2d 612, 614

flexible nature of equity, Texas has not construed constructive fraud so narrowly.[16] For example, although an intermediate Texas appellate court in Hubbard v. Shankle noted in its constructive fraud inquiry that no fiduciary relationship existed, it also explicitly referenced the absence of an additional "legal or equitable duty."[17] The state appellate court in Jean v. Tyson-Jean noted that a reasonable trier of fact could have concluded that there was no "breach . . . [of] fiduciary duty . . . or conduct . . . that was unfair to the community estate."[18]

Among the Texas cases that I have examined,[19] Shwiff v. Priest comes

(Tex. Civ. App.–Texarkana 1981, no writ) (same); Carnes v. Meador, 533 S.W.2d 365, 370 (Tex. Civ. App.–Dallas 1975, writ ref'd n.r.e.) (same).

[16] See, e.g., Vickery v. Vickery, 999 S.W.2d 342, 377 (Tex. 1999) ("Constructive fraud is most frequently found in a breach of a fiduciary or confidential relationship." (emphasis added)); Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex. 2002) (noting that a constructive fraud claim "is derivative, at least in part, of the breach of fiduciary duty claim." (emphasis added)); Seaside Indus., Inc. v. Cooper, 766 S.W.2d 566, 568 (Tex. App.–Dallas 1989, no writ) ("We need not decide if the [defendants] violated a legal duty. Constructive fraud also arises when an equitable duty is violated. . . . By taking a 'flexible fact-specific approach focusing on equity,' [a] court upheld the finding of a sham to perpetrate a fraud." (emphasis in original) (citation omitted) (quoting Castleberry v. Branscum, 721 S.W.2d 270, 273 (Tex. 1986), superceded by statute on other grounds, Tex. Bus. Corp. Act art. 2.21(A)(2) (Vernon 2007)); Hudspeth v. Stoker, 644 S.W.2d 92, 94 (Tex. App.–San Antonio 1982, writ ref'd) ("[C]onstructive fraud usually involves a breach of trust or confidential relationship . . . ." (emphasis added)); see also 32 C.J.S. Fraud § 7 (2008) ("[A]lthough there is authority to the contrary, it has been held that constructive fraud does not require the existence of a fiduciary or confidential relationship." (footnote omitted)).

[17] 138 S.W.3d at 483.

[18] 118 S.W.3d at 9 (emphasis added).

[19] I would be remiss if I did not note that only the trustee saw fit to discuss some of the cases examined here; the debtors' brief contains no analysis of the case law on constructive fraud in Texas. Further, the precedents in this circuit interpreting the requirements for constructive fraud under Texas law, Monnig's Dep't Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Dep't Stores, Inc.), 929 F.2d 197, 201 (5th Cir. 1991), Permian Petroleum Co. v.

closest to requiring a confidential or fiduciary relationship to support a finding of constructive fraud.[20] The Shwiff opinion, however, contains no reasoning beyond a mere citation to a case dealing with the duties owed by the spouses to community property as support for its contention that a fiduciary duty is required; and even this holding was not essential to the state court's conclusion

---

Petroleos Mexicanos, 934 F.2d 635, 644 (5th Cir. 1991), and Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Insurance Co., 832 F.2d 1358, 1369 (5th Cir. 1987), were completely ignored by both parties. In In re Monnig's, while discussing the requirements for a constructive trust, this court said that constructive fraud "usually involves a breach of trust or confidential relationship." 929 F.2d at 201 (emphasis added). Permian quoted the Archer formulation. 934 F.2d at 644. In Brooks, we noted that "[t]he benchmark of constructive fraud, as defined by Archer, is the existence of a fiduciary relationship," but this was not essential to our holding, which concerned interpretation of the word "fraud" in an insurance contract. 832 F.2d at 1369.

We have also apparently drawn a distinction between constructive fraud and breach of fiduciary duty. Cf. Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, 354 F.3d 348, 358 n.45 (5th Cir. 2003) ("[O]ur precedent interpreting Texas law as it relates to constructive trusts has not been altogether consistent. In some cases, we have interpreted Texas law as requiring a showing of actual fraud or breach of fiduciary duty . . . . More recently, we held that it was sufficient under Texas law for a plaintiff to show merely constructive fraud . . . . "). Some of the confusion over the concept of constructive fraud appears to result from our confusion over its cousin, the constructive trust. The imposition of a constructive trust is not at issue in this case because the Texas Insurance Code provides its own remedy for "fraud of a creditor," namely, denial of the exemption. TEX. INS. CODE ANN. § 1108.053 (Vernon 2007).

We did say, in an unpublished opinion, that Texas "appellate courts frequently intimate that [constructive fraud] occurs only where there is a fiduciary relationship between the parties." Joslin v. Pers. Invs., Inc., No. M03-40200, 2004 WL 436001, at *5 (5th Cir. Mar. 8, 2004) (unpublished). In another unpublished opinion, we also upheld a district court's dismissal of constructive fraud claims because no fiduciary or "special" relationship existed between the parties. Independence Hill, Ltd. v. Puller Mortgage Assocs., Inc., 33 F.3d 1378 (5th Cir. Aug. 10, 1994) (table). Consistent with Fifth Circuit Rule 47.5.4, we are not bound by these determinations, which are equivocal in any event. Furthermore, both should be rejected on the facts of this case and as a correct interpretation of Texas law.

[20] 650 S.W.2d at 902-03. Connell v. Connell, 889 S.W.2d 534, 542 (Tex. App.–San Antonio 1994, writ denied), also appears to equate constructive fraud with breach of fiduciary duty, but whether this was essential to the holding of the case, rather than simple dicta, is difficult to discern from the opinion.

that there was no constructive fraud, [21] as the court also found that there had been no harm.[22]

Although "a decision by an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court," we are empowered to reach the conclusion that we believe the state's highest court would reach if we are "convinced by other persuasive data that the highest court of the state would decide otherwise."[23] And, the clearest pronouncement on constructive fraud by the Texas Supreme Court is not limited by the necessity of a fiduciary or confidential relationship.[24] As noted above, its other cases hint at the expansive nature of the concept. A survey of Texas case law reveals that a fiduciary or confidential relationship is not a prerequisite for a finding of constructive fraud; there need only be a violation of a legal or equitable duty, determined according to a flexible and fact-specific approach.

Klein v. Sporting Goods, Inc., is an excellent example of this flexible approach.[25] There, the owner of a gun store, the Gun Exchange, had pledged his inventory as security for a bank loan. He was also indebted to unsecured trade creditors. After the bank gave notice of its intention to foreclose on the inventory, the store owner (1) incorporated a second company, the Gun Store, (2)

---

[21] Shwiff, 650 S.W.2d at 902.

[22] Id. at 903.

[23] First Nat'l Bank of Durant v. Trans Terra Corp. Int'l, 142 F.3d 802, 809 (5th Cir. 1998) (internal quotation marks omitted).

[24] See Archer v. Griffith, 390 S.W.2d 735, 740 (Tex. 1965). Cases like Vickery v. Vickery, 999 S.W.2d 342 (Tex. 1999), also demonstrate how flexible the concept of constructive fraud can be in Texas when they use words like "most frequently" and "ordinarily."

[25] 772 S.W.2d 173, 175 (Tex. App.–Houston 1989, writ denied).

secured a line of credit from a different bank, and (3) had the new corporation purchase the inventory of his former business, the Gun Exchange. He had the new corporation pay more than market value for the inventory to avoid personal liability to the first bank, which held his personal guarantee in addition to a security interest in the inventory. The unsecured trade creditors were paid nothing after the owner transferred all assets of the Gun Exchange to his new corporate alter ego, the Gun Store. The trade creditors commenced suit against the now judgment-proof Gun Exchange.

Relying on a theory of constructive fraud, the trade creditors, with whom no fiduciary relationship is evident from the opinion or from the typical trade creditor-debtor relationship, sought to have the corporate fiction of the Gun Exchange disregarded and to make the owner personally liable for its debts. On appeal, the court had little difficulty affirming the jury's finding of constructive fraud. It noted that although the corporate fiction will typically insulate shareholders, officers, and directors from liability, "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result," such insulation disappears.[26] The court further noted that the Texas Business and Commerce Code imposes a duty of good faith on all covered dealings and that the complex machinations of the Gun Store owner failed that test. As the duty of good faith was violated, and "[c]onstructive fraud is the breach of some

---

[26] Id. at 175. The Texas legislature has abolished shareholder liability as the remedy for constructive fraud. See Willis v. Donnelly, 199 S.W.3d 262, 271-72 (Tex. 2006). Although the Texas legislature has decided that constructive fraud should no longer result in the same remedy, the elaboration of what constitutes constructive fraud by Texas courts should not have been disturbed by this legislative action. This is also why constructive fraud cases from other areas of the law, like domestic relations, are useful elaborations of the concept. Constructive fraud as a concept, like many of the broad remedies of equity, can be found in diverse substantive fields of law.

legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent," the court affirmed the finding of constructive fraud.[27] Using corporate forms "as a method to avoid creditors . . . was legally and factually sufficient to support the jury's finding of constructive fraud."[28]

As no special relationship between the debtors and their creditors in the instant case appears from the record, such legal duties as, for example, good faith and fair dealing, do not provide a basis for a finding of constructive fraud.[29] Taking all the surrounding circumstances in this case into consideration, however, I am convinced that, under Texas common law, the debtors' annuity purchase violated an equitable duty. The factors recounted in the panel majority's opinion are worth repeating here. The debtors purchased the annuity on the eve of bankruptcy, an equitable proceeding.[30] Although the nature of the federal proceeding does not alter our Erie inquiry, it does inform the circumstances in which a Texas court would determine whether an equitable duty exists. Assuming the annuity was acquired with the debtors' non-exempt property, it was in an amount that would have covered all of the debtors' listed debts, leaving the creditors with only $340 in non-exempt assets. The debtors also retained control of the property because it appears this annuity, like almost

---

[27] Klein, 772 S.W.2d at 175.

[28] Id. at 176.

[29] See El Paso Natural Gas Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 312-13 (Tex. 1999).

[30] See TNB Fin. Inc. v. James F. Parker Interests (In re Grimland, Inc.), 243 F.3d 228, 234 (5th Cir. 2001) ("[T]he bankruptcy court is a court of equity and it must undertake an analysis of equitable considerations."); United States v. AWECO, Inc. (In re AWECO, Inc.), 725 F.2d 293, 300 (5th Cir. 1984) ("Equitable considerations should be preeminent in the exercise of bankruptcy jurisdiction.").

all, could be cashed out. And even though this feature is common to annuities, and thus cannot be proof of fraud in the ordinary case, here, the debtors conceded the temporary and contingent nature of the purchase.[31]

Klein provides support for the proposition that the debtors violated an equitable duty, yet because of the duty of good faith in that case, it is not on all fours with the present situation. At least one Texas court of appeals has, however, decided a case similar to Klein without reference to a legal or equitable duty of good faith. In Speed v. Eluma International, Inc., the owner of a corporation claimed that the corporation was in arrears on rent owed to him, giving him a lessor's lien on which he immediately foreclosed, permitting him to transfer the entirety of the corporation's assets to a third party for a prearranged sum.[32] This deal structure was used to circumvent a temporary restraining order that the creditors of the company had obtained to enjoin the very sale that

---

[31] In a related context, we recently said:

Exempting all money traceable to a [whole-life insurance policy, exempt under section 1108.51 of the Texas Insurance Code] would allow people to use such policies merely to avoid creditors. People could place their money in a whole-life policy . . . . Sometime later — presumably even after only a few days — they could withdraw some of the money, or even all of it, forever shielding the money from creditors. That can't be the law. Less insidiously, someone desiring to have a whole-life policy actually for insurance reasons nonetheless could put her extra money into the policy simply to shield it from creditors. That also can't be the law.

Milligan v. Trautman (In re Trautman), 496 F.3d 366, 370 (5th Cir. 2007). Similarly, it surely cannot be the law here that whether in an effort to "maximize the debtors' exemptions" or to prevent litigation of their share of a possibly disputed inheritance that the debtors are permitted to shield all but $340 from their creditors. "We certainly have no quarrel with [the] contention that the federal courts should bend every effort to prevent the bankruptcy statutes from being used as a cloak for fraud." Piedmont Ice & Coal Co. v. Am. Serv. Co., 130 F.2d 78, 80 (4th Cir. 1942).

[32] 757 S.W.2d 794, 797-98 (Tex. App.–Dallas 1988, writ denied), disapproved of on other grounds by Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634 (Tex. 1989).

the owner carried out through a different mechanism. The court concluded that this violated an equitable duty and refused to reverse the jury's finding of constructive fraud.[33]

As in Klein and Speed, the annuity in the instant case has been used to achieve an inequitable result through machinations that have deprived the creditors of satisfaction for their claims and the bankruptcy court of the ability to adjudicate ownership of assets that might belong to the estate. Under the foregoing common law interpretation of the Insurance Code's constructive fraud provision, the bankruptcy court was justified in looking through the sham of the annuity to the real source of the money, just as the courts in Klein and Speed used constructive fraud to prevent inequity. But this justification, I emphasize, is found in Texas common law, not in some tortured construction of dissimilar Texas statutes. It is for these reasons that, with respect, I specially concur in the panel majority's judgment.

---

[33] Id. at 798; see id at 797 ("[T]he [Texas] [S]upreme [C]ourt upheld a finding of constructive fraud when a contract debtor manipulated corporate assets so that a contract creditor's claim could be not be satisfied out of corporate assets." (citing Castleberry v. Branscum, 721 S.W.2d 270 (Tex. 1986), superceded by statute on other grounds, TEX. BUS. CORP. ACT art. 2.21(A)(2) (Vernon 2007)).